***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Defendant-employer was an approved self-insured for workers' compensation with Cunningham Lindsey acting as its servicing agent at all relevant times herein.
4. Plaintiff's average weekly wage was $444.00 per week, yielding a compensation rate of $296.00 at all relevant times herein.
5. That plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer on December 16, 1999; while he was using a trenching machine, but the defendant-employer disputes that the injury by accident resulted in plaintiff's current medical condition.
6. The issues to be determined by the Full Commission are as follows:
 Whether plaintiff's present low back condition is related and/or caused by his admittedly compensable injury by accident of December 16, 1999?
 If so, what, if any, additional benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
7. The depositions of Dr. Gary N. Greenberg and Dr. Robert J. Wilson, III are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-two (42) years old at the time of the deputy commissioner hearing of this matter. Defendant-employer first employed plaintiff on August 1, 1999, as a service technician. Plaintiff's job duties included installing and running gas lines, delivering propane gas by truck to customers, digging trenches for gas lines, and other jobs. Plaintiff's job required him to carry loads up to one-hundred (100) pounds with co-employee assistance.
2. On December 16, 1999, plaintiff was using a walk behind trencher when the trencher struck a boulder, twisted, and threw plaintiff to the ground; the twisting of the trencher also twisted plaintiff's lower back. Plaintiff finished the day and reported the incident to his supervisor before leaving the job.
3. Plaintiff sought and received medical treatment the next day, December 17, 1999, at the Durham Regional Hospital emergency room. Plaintiff gave a history of hurting his back and complained of pain in his lower back radiating down into his left leg. The attending physician's notes indicate plaintiff had a negative straight leg raise test and full range of motion in his back. Plaintiff was diagnosed with lumbar pain, prescribed Advil and Vicodin, and taken out of work for three days. Plaintiff was thereafter released to return to work without restrictions as of December 20, 1999.
4. On December 22, 1999, plaintiff presented to Dr. Robert J. Wilson, III, the orthopedic physician who treated him for a previous work-related cervical disc injury in 1997. Dr. Wilson testified that plaintiff made no mention at this visit of his work accident that had occurred just six days previously nor did plaintiff color in his back on a pain chart he completed himself upon his arrival at Dr. Wilson's office. Dr. Wilson's straight leg test performed on this date also revealed normal results and lack of nerve compression.
5. On December 23, 1999, plaintiff was again seen in the Durham Regional Hospital emergency room with continued low back pain complaints. The attending physician notes stated "plaintiff has full range of motion of lumbar spine and walks heel and toe without difficulty." Plaintiff's straight leg test was also within normal limits. The physician's notes also again indicated that plaintiff's pain was not due to nerve compression. The attending physician prescribed Advil, Flexeril, and Vicodin and released plaintiff to return to full duty work on December 27, 1999.
6. Plaintiff next visited UNC Hospitals Emergency Room on December 27, 1999 with a diagnosis of low back pain and was prescribed Motrin, Percocet, and Valium and released to return to work on January 3, 2000 with light duty restrictions for only five days and then resumption of normal work activities.
7. Merely three days later, December 30, 1999, plaintiff again visited Durham Regional Emergency Room on December 30, 1999 with the same diagnosis of lower back pain and was provided with a refill of Vicodin.
8. Despite the treatment recommendations of the attending physicians at both UNC and Durham Regional Hospital that plaintiff be evaluated by an orthopedic or spine clinic, on January 10, 2000, plaintiff visited Dr. Mohan Chilikuri at the Hillandale Medical Center. Plaintiff complained of low back pain radiating into his left leg and into the upper portion of his left thigh and was diagnosed with a lumbar back strain with radicular symptoms. Dr. Chilikuri restricted plaintiff's work duties to include no lifting, pushing, or pulling over twenty pounds. During the course of his treatment, Dr. Chilikuri provided plaintiff with prescriptions for Flexeril, Hydrocodone, Naprosyn, and Ultram.
9. Plaintiff followed up at the Hillandale Medical Center on January 17, 2000. Plaintiff was again diagnosed with low back pain radiating into his left leg and thigh. Dr. Chilikuri also advised plaintiff at this visit that he could return to work with the same work restrictions as imposed one week previously. Plaintiff also subsequently called Hillandale medical center requesting refills of Flexeril and Hydrocodone which Dr. Chilikuri approved.
10. On January 22, 2000, plaintiff again visited UNC Hospitals Emergency Room where he was diagnosed with lower back strain, referred to the UNC Orthopedic Clinic, and provided with an additional prescription for Percocet.
11. On February 14, 2000, plaintiff was seen at the UNC Orthopedic Clinic by Dr. Joseph Minchew. Plaintiff reported to Dr. Minchew that since his injury of December 16, 1999, he had experienced significant back pain with intermittent symptoms of radiating and burning sensations to the left lateral thigh exacerbated by sitting, coughing, sneezing, or straining for bowel movements. At this visit, plaintiff had full lumbar range of motion and exhibited positive Waddell signs indicating symptom exaggeration. Dr. Minchew's notes also state that plaintiff reported that he had no prior history of back pain. Even so, Dr. Minchew diagnosed plaintiff with mechanical low back pain and referred him to physical therapy. Dr. Minchew also noted that plaintiff had last worked at the end of January 2000 and placed him on limited work duty for approximately four to six weeks. Plaintiff was again seen at the UNC Orthopedic Clinic on March 20, 2000 and was prescribed several medications at these visits including Vioxx, Relafen, Neurontin, and Ultram.
12. Meanwhile, on March 1, 2000, plaintiff again presented to Dr. Wilson with complaints of neck and arm pain. At this visit, plaintiff reported that he had fallen in the snow in January 2000 which aggravated his neck and arm pain. However, plaintiff still failed to mention his alleged work related injuries of December 16, 1999 or that he was experiencing back pain during this visit with Dr. Wilson. Dr. Wilson continued to provide plaintiff with prescription narcotic medication purportedly for plaintiff's arm and neck conditions from December 22, 1999 through September 26, 2000, the date of his last visit.
13. Plaintiff again visited the Durham Regional Hospital Emergency Room on March 13, 2000 where he was diagnosed with lower back pain and received 100 milligrams of Demerol and 25 milligrams of Phnergen.
14. On May 28, 2000, plaintiff was seen in the Duke University Medical Center Emergency Room following a fall at home wherein he was walking up the steps of his residence, his leg buckled, and he caught his entire weight on a step. Plaintiff testified that he experienced an immediate onset of excruciating pain and he was barely able to walk.
15. On May 30, 2000, plaintiff visited Dr. Gary N. Greenberg in the Duke Family Medicine Center. At this visit, plaintiff complained of pain associated with his recent fall down the stairs of his home. An MRI was subsequently performed which revealed plaintiff had a herniated disc at L5-S1. Plaintiff's medical records contain no objective evidence of a herniated disc prior to the May 28, 2000 incident.
16. Plaintiff grossly misrepresented his medical history at his first visit with Dr. Greenberg. Plaintiff denied any previous problems or trauma with his back except for the December 16, 1999 incident and did not disclose any of his previous physician visits and/or narcotic pain medication he was concurrently receiving from other treating physicians. Dr. Greenberg was unaware that plaintiff had been to the emergency room on several occasions and had obtained narcotic pain medication at each visit. Dr. Greenberg was also unaware that plaintiff was still treating with Dr. Wilson of Triangle Orthopedic Associates. Likewise, Dr. Wilson, who treated plaintiff until September 2000, was unaware that plaintiff was simultaneously treating with Dr. Greenberg. Plaintiff was receiving multiple prescriptions for narcotic pain medications including opiate drugs such as Oxycontin and Oxycodone as well as Paxil and Diazepam while treating with both Dr. Wilson and Dr. Greenberg without their knowledge.
17. From August 2000 through December 2001, plaintiff was prescribed 630 Oxycodone tablets and 426 Oxycontin tablets. Between June 13, 2001 and November 2001, plaintiff was prescribed 668 Oxycontin and 750 Percocet and Oxycodone. Dr. Greenberg testified that the amount of opiate derived prescription medication that plaintiff was receiving during this time was in excess of the recommended dosage, and plaintiff's use of multiple pharmacies caused him concern.
18. Dr. Greenberg also testified that early in the course of his treatment of plaintiff, he received information from an anonymous neighbor that plaintiff may have been selling prescription pain medication. In addition, Dr. Greenberg received a phone call in October 2000 from a pharmacy indicating plaintiff was receiving narcotic pain medication prescribed by Dr. Wilson at the same time he was attempting to fill Dr. Greenberg's prescription.
19. Following these incidents of plaintiff's alleged narcotics misuse, Dr. Greenberg required plaintiff to execute a contract for controlled substance use. Plaintiff broke this contract by continuing to obtain narcotic prescriptions from multiple treating physicians and at multiple pharmacies.
20. The greater weight of the evidence indicates that plaintiff engaged in a continuous pattern of actively seeking and misusing or abusing narcotic pain medications prescribed by his various treating physicians; therefore, the Full Commission finds that plaintiff's testimony as a whole is not credible.
21. Plaintiff's treating physician at Hillandale Medical Center, Dr. Chilikuri, authorized him to return to work with restrictions in January 2000. Dr. Minchew with the UNC Hospital Clinic placed plaintiff on light duty beginning February 14, 2000 for four to six weeks. Dr. Minchew's notes regarding plaintiff's March 20, 2000 visit make no mention of continuing plaintiff's work restrictions. Thus, plaintiff's medical records do not indicate that plaintiff was completely written out of work anytime after January 2000. Furthermore, plaintiff's medical records include no evidence of continued light duty restrictions after March 28, 2000 prior to his May 28, 2000 accident at home.
22. After receiving notice of plaintiff's light duty work restrictions, defendant-employer informed plaintiff that they had light duty work available for him. Suitable employment within plaintiff's restrictions was available at all times following his release to return to work; however, plaintiff did not return to work. Plaintiff has failed to present any medical excuse or justification for his failure to work after his January 2000 release to return to work with light duty restrictions.
23. Plaintiff admitted that he occasionally helped out at his wife's hair salon, Becca's Hair Studio, between January 2000 and May 28, 2000. Surveillance video and multiple witnesses' testimony indicate plaintiff worked at the hair salon frequently and for extended periods of time. At the hair salon, plaintiff answered the phones, scheduled appointments, swept around the shop, unloaded boxes weighing more than twenty pounds and stocked shelves, folded towels, and drove to pick up supplies. Surveillance video showed plaintiff bending freely at the waist, carrying boxes of supplies, and carrying baskets full of laundry in and out of his home. Plaintiff's wife, Rebecca Crawford, admitted these were tasks which other employees would have been required to do or that she would have paid an employee to do.
24. The medical evidence, surveillance video, and plaintiff's presence at his wife's hair salon show plaintiff had wage earning capacity after his release to return to work with restrictions in January 2000.
25. Although Dr. Greenberg initially connected plaintiff's herniated disc to his work-related injury, he recanted this opinion after reviewing plaintiff's medical record and history and repeatedly testified that there was no evidence to support a finding of a herniated disc prior to plaintiff's May 28, 2000 fall at his residence. More specifically, after reviewing all of plaintiff's medical records between December 16, 1999 and May 28, 2000, Dr. Greenberg testified that consistent findings in objective testing performed on plaintiff confirmed that plaintiff suffered no disc herniation or nerve root compression prior to his May 28, 2000 injury.
26. Defendant has provided sufficient evidence to rebut the causal relationship between plaintiff's December 16, 1999 injury by accident and subsequent disc herniation. The overwhelming weight of the evidence indicates that plaintiff's herniated disc and subsequent back condition and disability were caused by his May 28, 2000 fall at his residence, not his previous compensable injury by accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of the course and scope of his employment on December 16, 1999. N.C.G.S. § 97-2(6).
2. Plaintiff unjustifiably refused suitable employment within his work restrictions offered by defendant-employer. N.C.G.S. § 97-32.
3. At no time was plaintiff totally disabled as a result of his injury on December 16, 1999 following his release to return to work in January 2000. N.C.G.S. § 97-2(9).
4. An award of benefits cannot stand if "there is no expert medical testimony tending to establish a causal relationship between the work related accident and the disability for which compensation is sought."Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 at 167, 265 S.E.2d 389,391 (1980). "Could or might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. Young v.Hickory Business Furniture, 353 N.C. 227 at 233, 538 S.E.2d 912 at 916 (2000). Dr. Greenberg's original opinion establishing a causal connection between plaintiff's herniated disc and his work related injury was mere speculation as he did not have the benefit of reviewing all of plaintiff's medical records and had received an incomplete medical history from plaintiff at the time he initially formed an opinion. In fact, after reviewing all of plaintiff's medical records, Dr. Greenberg testified that prior to plaintiff's fall in May 2000, there was no indication plaintiff was suffering from a herniated disc. Consequently, Dr. Greenberg's initial opinion regarding causation is insufficient to support a finding of a causal relationship between plaintiff's work-related injury and subsequent herniated disc.
5. Defendant has the responsibility to prove the original finding of compensable injury is unrelated to the claimant's present discomfort.Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). Defendants have successfully rebutted this presumption by presenting expert medical evidence demonstrating that plaintiff's herniated disc and resulting back condition and disability did not occur until his May 28, 2000 accident at home.
6. Defendant has presented evidence to show that plaintiff's inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to his injury following his release to return to work with restrictions in January 2000 is not due to any disability related to injuries sustained in his December 16, 1999 injury by accident. N.C.G.S. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission REVERSES the holding of the deputy commissioner and enters the following:
 ORDER
1. Plaintiff's claim for additional benefits is hereby DENIED.
2. Each party shall bear its own costs.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER