JUDY CAROLYN YOUNG, Employee v. HICKORY BUSINESS FURNITURE, Employer, SELF-INSURED (ALEXSIS, INC., SERVICING AGENT)

No. 143A00

(Filed 21 December 2000)

**Workers' Compensation— causation—fibromyalgia—doctor's opinion testimony**

The Court of Appeals erred in concluding that competent evidence was presented to support the Industrial Commission's findings of fact with regard to the cause of plaintiff-employee's fibromyalgia based solely on the opinion testimony of one doctor, because: (1) the doctor's testimony consists of comments and responses demonstrating his inability to express an opinion to any degree of medical certainty as to the cause of plaintiff's illness; and (2) the doctor's testimony demonstrated an opinion based solely on supposition and conjecture.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 137 N.C. App. 51, 527 S.E.2d 344 (2000), affirming an opinion and award entered 28 January 1999, by the North Carolina Industrial Commission. Heard in the Supreme Court on 13 September 2000.

YOUNG v. HICKORY BUS. FURN.

[353 N.C. 227 (2000)]

*Randy D. Duncan for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by J.A. Gardner, III, and Melissa L. McDonald, for defendant-appellant.*

LAKE, Justice.

This case arises from proceedings before the North Carolina Industrial Commission (the Commission) and raises the issue of whether the Commission's findings of fact were supported by competent evidence establishing causation between an employment-related injury and the development of fibromyalgia.

On 3 March 1992, while working for employer-defendant (Hickory Business Furniture), employee-plaintiff (Young) reached across some chairs to lift another chair and felt a pop in her back and the onset of pain. The accident resulted in plaintiff's suffering a lumbo-sacral strain. Prior to this occurrence, plaintiff had experienced no significant problems with her back.

Following the injury, plaintiff was treated by Dr. Robert Hart, a family practitioner who served as defendant's physician. Dr. Hart recommended therapy for plaintiff's complaints of mid-back pain. Plaintiff's symptoms persisted, and on 31 March 1992, Dr. Hart referred plaintiff to Dr. H. Grey Winfield, an orthopedist. After examination, Dr. Winfield found plaintiff to have full range of motion in the lower extremities, with some evidence of "symptom magnification." Dr. Winfield continued to treat plaintiff through 21 May 1992, after which plaintiff did not return for a follow-up assessment. On 1 April 1992, the parties entered into a Form 21 agreement, compensating plaintiff at a rate of $226.14 per week for "necessary weeks."

On her own initiative, plaintiff sought treatment from Dr. Bruce Hilton, a chiropractor, on 9 November 1992, and on 20 July 1993, he rated her as retaining a five percent permanent partial impairment to her back. At the time of the rating, plaintiff continued to experience pain in her back and right hip and tingling in her right leg. On 19 August 1993, the parties signed a Form 26, "Supplemental Memorandum of Agreement as to Payment of Compensation," stipulating to a five percent permanent partial disability and agreeing to compensation of $226.14 for fifteen weeks, beginning 13 July 1993. Plaintiff continued to work until October 1994, when she was discharged by defendant on the basis that she was not physically able to perform her job.

YOUNG v. HICKORY BUS. FURN.

[353 N.C. 227 (2000)]

In 1995, plaintiff saw a rheumatologist, Dr. Dennis Payne, for her back problems, whereupon she was diagnosed with fibromyalgia. Dr. Payne's opinion at that time was that plaintiff's condition was likely related to her 1992 work-related injury. On 10 January 1995, plaintiff filed a Form 33, requesting that the claim be assigned for hearing, on which she stated that her condition had substantially worsened and that she had been unable to work from 29 August 1994 to the date of the filing. Defendant filed a response on 29 July 1995, stating that there was no medical evidence to support plaintiff's claim.

The matter was heard by Deputy Commissioner Lorrie L. Dollar on 15 August 1995. On 18 October 1996, she entered an opinion and award concluding that plaintiff had sustained a substantial change in condition and awarding plaintiff temporary total disability compensation from 20 October 1994 and continuing until further order of the Commission. Defendant filed a formal "Application for Review" by the full Commission on 24 January 1997. The matter was reviewed by the full Commission on 7 April 1997. On 2 June 1997, the Commission, with one commissioner dissenting, entered its opinion and award, essentially affirming the deputy commissioner's opinion and award. Defendant gave notice of appeal to the Court of Appeals.

In a unanimous, unpublished decision filed 21 April 1998, the Court of Appeals held that the Commission failed to make sufficient findings of fact to support its order, vacated the Commission's opinion and award, and remanded the matter to the Commission "for definitive findings and proper conclusions therefrom, and entry of the appropriate order."

On 28 January 1999, the full Commission, with one commissioner dissenting, entered a new opinion and award, setting out additional findings of fact and conclusions of law and again awarding plaintiff temporary total disability compensation from 20 October 1994 and continuing until further order of the Commission. Once again, defendant gave notice of appeal to the Court of Appeals.

In a published, split decision, the Court of Appeals affirmed the Commission's opinion and award. Defendant appeals to this Court from the decision of the Court of Appeals on the basis of the dissent.

The issue before this Court is whether there was competent evidence presented to establish a causal connection between the original injury by accident to plaintiff's back on 3 March 1992 and her later

diagnosis of fibromyalgia. The Court of Appeals' majority determined that competent evidence was presented which was sufficient to support the Commission's findings of fact. We disagree.

Although it is well established that " '[t]he [Industrial] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony,' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)), findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them, *Saunders v. Edenton OB/GYN Ctr.*, 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000). In the instant case, the Industrial Commission's findings of fact with regard to the cause of Ms. Young's fibromyalgia were based entirely upon the weight of Dr. Payne's opinion testimony as an expert in the fields of internal medicine and rheumatology. Therefore, the competency of that testimony is determinative in our analysis and decision in this case.

Due to the complexities of medical science, particularly with respect to diagnosis, methodology and determinations of causation, this Court has held that "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). However, when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. Indeed, this Court has specifically held that "an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility." *Dean v. Carolina Coach Co.*, 287 N.C. 515, 522, 215 S.E.2d 89, 94 (1975); *see also Cummings v. Burroughs Wellcome Co.*, 130 N.C. App. 88, 91, 502 S.E.2d 26, 29, *disc. rev. denied*, 349 N.C. 355, 517 S.E.2d 890 (1998); *Ballenger v. Burris Indus.*, 66 N.C. App. 556, 567, 311 S.E.2d 881, 887, *disc. rev. denied*, 310 N.C. 743, 315 S.E.2d 700 (1984).

In the case *sub judice*, the Court of Appeals held that Dr. Payne's opinion regarding the etiology of plaintiff's current condition was more than mere speculation and, therefore, was sufficient to support the Commission's finding that plaintiff's reactive fibromyalgia was caused or substantially aggravated by her original injury by accident.

*Young v. Hickory Bus. Furn.*, 137 N.C. App. 51, 56, 527 S.E.2d 344, 348 (2000). However, a review of Dr. Payne's deposition, the sole source of evidence pertaining to his opinion, reveals that his opinion as to the causative nature of Ms. Young's fibromyalgia was based entirely upon conjecture and speculation.

Early in his deposition, Dr. Payne testified on direct examination that he frequently could not ascribe a cause for fibromylagia in his patients. He stated: "I must say that a lot of times I have no idea why someone has fibromyalgia. Far and away, fibromyalgia occurs more commonly for unknown reasons." Later, Dr. Payne agreed with defense counsel's statement that fibromyalgia was an illness or condition of unknown etiology. Furthermore, Dr. Payne acknowledged that there were no physical tests that one can perform, or testing of any kind with regard to chemical abnormality in the body, which would indicate whether a person has fibromyalgia.

The speculative nature of Dr. Payne's expert opinion is reflected in his testimony that while he acknowledged that he knew of several other potential causes of Ms. Young's fibromyalgia, he did not pursue any testing to determine if they were, in fact, the cause of her symptoms. For instance, Dr. Payne conceded that he was aware of osteoarthritis in Ms. Young and that her sister was diagnosed with rheumatoid arthritis. However, when asked on cross-examination whether he had performed any tests to rule out other forms of rheumatoid disease or illness that could account for Ms. Young's symptoms, Dr. Payne testified that he had not. Indeed, when asked by defense counsel whether those tests had been conducted, Dr. Payne simply responded, "[T]hose studies need to have been done." Additionally, in response to defense counsel's questions about other potential causes of Ms. Young's symptoms, Dr. Payne admitted that he did not attempt to ascertain whether plaintiff suffered from any viral or bacterial illnesses during the time between her injury and his diagnosis of fibromyalgia. This response followed the doctor's acknowledgment of case reports suggesting that fibromyalgia could be associated with a postbacterial illness reaction or a postviral reaction.

The speculative nature of the doctor's opinion is further reflected in his testimony regarding Ms. Young's gallbladder surgery in 1994. Plaintiff's surgery took place two years after her injury and seven months before her first visit with Dr. Payne. On cross-examination, the doctor acknowledged that surgery is an "event that is thought to trigger or aggravate fibromyalgia," and that, depending on how well

Ms. Young tolerated her gallbladder surgery, it "could have aggravated [plaintiff's] fibromyalgia." The record therefore supports, through Dr. Payne's own admissions, at least three potential causes of fibromyalgia in Ms. Young other than her injury in 1992.

In reaching his conclusion, however, that plaintiff's fibromyalgia could be related to her work-related injury, Dr. Payne found it necessary to rely on the maxim *"post hoc, ergo propter hoc,"* which is to say in Latin, "after this, therefore because of this." On cross-examination, Dr. Payne responded to questioning as follows:

> Q. Is there any way that one can definitively assign a cause or aggravation of fibromyalgia to any particular event other than the application of the doctrine, post hoc ergo propter hoc?
>
> A. No.
>
> Q. Okay. In other words, there's nothing you can do to test it, to look at it, other than she didn't have it before, she has it now, what intervened, I'm going to blame it on that?
>
> A. Correct.

Dr. Payne's total reliance on this premise is shown near the end of his deposition testimony wherein he states: "I think that she does have fibromyalgia and I relate it to the accident primarily because, as I noted, it was not there before and she developed it afterwards. And that's the only piece of information that relates the two."

The maxim *"post hoc, ergo propter hoc,"* denotes "the fallacy of . . . confusing sequence with consequence," and assumes a false connection between causation and temporal sequence. *Black's Law Dictionary* 1186 (7th ed. 1999). As such, this Court has treated the maxim as inconclusive as to proximate cause. *See Johnson v. Western Union Tel. Co.*, 177 N.C. 31, 32, 97 S.E. 757 (1919); *Ballinger v. Rader*, 151 N.C. 383, 385, 66 S.E. 314, 314-15 (1909). This Court has also held that "[i]t is a settled principle that the law looks to the immediate and not the remote cause of damage, the maxim being *'Causa proxima, sed non remota spectatur.'* " *Johnson*, 177 N.C. at 33, 97 S.E. at 758. In a case where the threshold question is the cause of a controversial medical condition, the maxim of *"post hoc, ergo propter hoc,"* is not competent evidence of causation.

The Court of Appeals made no mention of Dr. Payne's reliance on the aforementioned maxim as the basis for his opinion. It did, how-

ever, acknowledge the speculative nature of Dr. Payne's medical opinion, pointing out that "Dr. Payne conceded that fibromyalgia is controversial 'because there's difficulty in objectively studying [the condition].' " *Young*, 137 N.C. App. at 56, 527 S.E.2d at 348. Nonetheless, the Court of Appeals concluded that Dr. Payne gave an opinion, "to a reasonable degree of medical certainty, that plaintiff's compensable 'injury could have or would have aggravated or caused the fibromyalgia.' " *Id.* This Court has allowed "could" or "might" expert testimony as probative and competent evidence to prove causation. *See Mann v. Virginia Dare Transp. Co.*, 283 N.C. 734, 747-48, 198 S.E.2d 558, 567-68 (1973); *Lockwood v. McCaskill*, 262 N.C. 663, 668, 138 S.E.2d 541, 545 (1964). However, this Court has also found "could" or "might" expert testimony insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. *See Maharias v. Weathers Bros. Moving & Storage Co.*, 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962).

Based on the foregoing analysis, we conclude that Dr. Payne's testimony, throughout both direct and cross-examination, consists of comments and responses demonstrating his inability to express an opinion to any degree of medical certainty as to the cause of Ms. Young's illness. Dr. Payne's responses were forthright and candid, and demonstrated an opinion based solely on supposition and conjecture. We therefore hold that this evidence, the sole evidence as to causation, was incompetent and insufficient to support the Industrial Commission's findings of fact. The opinion of the Court of Appeals, affirming the Industrial Commission's findings of fact, is, therefore, reversed and this case is remanded to that court for further remand to the North Carolina Industrial Commission for disposition in accordance with this opinion.

REVERSED AND REMANDED.