NAOMI SINGLETARY, Employee, Plaintiff v. NORTH CAROLINA BAPTIST HOSPITAL, Employer, SELF-INSURED, Defendant

No. COA04-1459

(Filed 18 October 2005)

**1. Workers' Compensation— disability—extent—sufficiency of evidence**

A workers' compensation plaintiff failed to prove disability after 2 May 2002 where her doctor wrote a note excusing her from work until 2 May, but no physician instructed her to remain out of work thereafter.

**2. Workers' Compensation— disability—presumption of continuing—same award**

A disability finding did not entitle a workers' compensation plaintiff to a presumption of continuing disability in the same award. Showing the existence of a disability did not relieve her from proving the extent of the disability.

**3. Workers' Compensation— denial of claim—reasons valid and sufficiently detailed**

Defendant provided valid reasons and sufficient details for denying a workers' compensation claim where defendant was concerned about whether plaintiff was being honest about her condition, and sought to challenge whether plaintiff had devel-

oped fibromyalgia, and whether that condition was linked to plaintiff's accident at work.

**4. Workers' Compensation— defense of claim—reasonable**

Defendant-hospital's defense of a workers' compensation claim was reasonable, and the Industrial Commission did not abuse its discretion by not assessing sanctions against the defendant.

**5. Workers' Compensation— causation—temporal relationship between accident and injury**

The Industrial Commission's finding of causation was supported by competent record evidence where the doctor's opinion was formed by the temporal relation between the accident at work and the injury (there was no problem before the injury and there was a problem afterwards), but he also considered, tested for, and excluded other causes of her condition.

**6. Workers' Compensation— disability—extent—evidence**

There was competent evidence supporting the extent of a workers' compensation disability through 2 May 2002 where a doctor determined that plaintiff was unable to work and wrote a note excusing her from work until 2 May 2002.

Appeal by plaintiff and defendant from an opinion and award filed 11 June 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 June 2005.

*Jay Gervasi, P.A., by Jay A. Gervasi, Jr., for plaintiff appellant-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Philip J. Mohr, for defendant appellant-appellee.*

McCULLOUGH, Judge.

Both parties appeal from an opinion and award of the North Carolina Industrial Commission ("the Commission") granting workers' compensation benefits to plaintiff Naomi Singletary ("Singletary") for fibromyalgia arising from an injury sustained during her employment with defendant North Carolina Baptist Hospital ("the Hospital"). On appeal, Singletary contends that the award is insufficient, and the Hospital contends that no award should have been made at all. With respect to both appeals, we affirm.

SINGLETARY v. N.C. BAPTIST HOSP.

[174 N.C. App. 147 (2005)]

FACTS

On 7 October 2001, Singletary was working at defendant Hospital as a certified nursing assistant. While Singletary and a registered nurse were cleaning a very heavy patient, the registered nurse lost her grip on the patient, who fell onto Singletary's right arm and shoulder. Singletary felt a pop and immediately experienced pain in her back. Within a few hours of the incident, she sought treatment at the Hospital's emergency room. Singletary was diagnosed as having low back pain and instructed to return to work at light duty for the next three days.

On 10 October 2001, Singletary visited the Hospital's employee health services department for back pain. She was diagnosed with cervical and lumbar strain and spasm, was told not to return to work until 15 October, and was given a forty-pound lifting restriction. On 15 October 2001, Singletary returned to employee health services with complaints of back pain. She was permitted to remain out of work until 22 October. On 24 October 2001, Singletary returned to employee health services and reported that she had attempted to return to light duty two days earlier but was unable to work because of pain. Singletary was kept out of work and sent to physical therapy.

As of 16 November 2001, Singletary had shown little improvement, so employee health services referred her to an orthopedic specialist. A physician's assistant at the Hospital's orthopedics department diagnosed Singletary with mechanical low back pain and referred her to Dr. Robert Irwin. Following an examination on 17 January 2002, Dr. Irwin diagnosed Singletary as having fibromyalgia and determined that she was "not fit for any duty." Dr. Irwin drafted a note excusing Singletary from work until 2 May 2002. In a deposition submitted to the Commission, Dr. Irwin related Singletary's fibromyalgia to the 7 October 2001 incident at work.

Prior to the time when Singletary sought treatment from Dr. Irwin, the Hospital had been covering her medical expenses and compensating her for the time that she was excused from work. However, on 3 December 2001, the Hospital filed a Form 61 "Denial of Workers' Compensation Claim," pursuant to which the Hospital ceased paying compensation and medical benefits to Singletary. Pursuant to this filing, the Hospital declined to pay medical bills incurred by Singletary after her 17 January 2002 appointment with Dr. Irwin, and Singletary was unable to receive further treatment by Dr. Irwin.

In an opinion and award filed 11 June 2004, the Commission determined that Singletary had sustained an injury by accident arising out of and in the course of her employment which caused or aggravated her fibromyalgia. The Hospital was ordered to pay temporary total disability benefits to Singletary from 7 October 2001 until 2 May 2002 and to pay past and future medical expenses related to her injury. From this opinion and award, both parties now appeal.

### SINGLETARY'S APPEAL

We begin with Singletary's appeal. Singletary argues that the Commission erred by (I) determining that she failed to prove the existence of a disability, as the term is defined by the Workers' Compensation Act, after 2 May 2002, (II) failing to apply a presumption of ongoing disability, (III) determining that the Hospital had taken sufficient action to deny the compensability of her claim, and (IV) determining that the Hospital's defense of her claim was reasonable and by failing to assess sanctions.

### I.

**[1]** We first address Singletary's argument that the Commission erred by finding and concluding that she had failed to prove that she was under a disability after 2 May 2002. This contention lacks merit.

Section 97-2(9) of the North Carolina General Statutes defines a disability to mean "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2003). "[A] claimant ordinarily has the burden of proving both the existence of [a] disability and its degree." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). This Court must affirm the Commission's disability determination if (1) its findings are supported by competent record evidence and (2) its conclusions are supported by findings of fact and applicable law. *See Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997) (noting this Court's standard of review).

In the instant case, Dr. Irwin wrote a note excusing Singletary from work until 2 May 2002, and neither Dr. Irwin nor any other physician instructed her to remain out of work thereafter. Furthermore, the Commission was not required to find as credible any evidence that she was unable to work after 2 May 2002. *See Effingham v. Kroger Co.*, 149 N.C. App. 105, 109-10, 561 S.E.2d 287, 291 (2002) ("[T]he Commission is the sole judge of the credibility of the wit-

nesses and the weight accorded to their testimony."). As such, we are unpersuaded that the Commission erred by finding and concluding that Singletary had failed to prove disability after 2 May 2002.

## II.

**[2]** We next address Singletary's contention that the Commission could not determine that her disability ended on 2 May 2002 because she was entitled to a presumption of continuing disability pursuant to *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971). This contention lacks merit.

Under *Watkins*, once an employee proves a disability, "there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred." *Id.* To avail herself of the *Watkins* presumption, a claimant must meet the initial burden of proving a disability in one of two ways: "(1) by a previous Industrial Commission award of continuing disability, or (2) by producing a Form 21 or Form 26 settlement agreement approved by the Industrial Commission." *Cialino v. Wal-Mart Stores*, 156 N.C. App. 463, 470, 577 S.E.2d 345, 350 (2003).

In the instant case, Singletary is unable to rely upon either a **previous** opinion and award of the Commission establishing a continuing disability or a Commission-approved settlement agreement. Instead, she argues that, because the Commission's opinion and award made a finding of disability, *Watkins* required the Commission to apply a presumption of continuing disability in the **same** opinion and award. Stated differently, it is Singletary's contention that, once she had shown the existence of a disability, she was relieved from proving the extent of it. However, it is well established that a claimant bears the burden of proving the extent of her disability. *See, e.g., Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683.

This assignment of error is overruled.

## III.

**[3]** We next address Singletary's argument that the Commission erred by determining that the Hospital had taken sufficient action to deny the compensability of her claim. Singletary admits that the Hospital intended to deny her claim, but she insists that its filing failed to provide the statutorily required statement of the grounds for denying compensability. This contention lacks merit.

Section 97-18(d) of the North Carolina General Statutes establishes a procedure pursuant to which an employer that is "uncertain on reasonable grounds whether [a] claim is compensable or whether it has liability" may initiate payment of benefits to an employee without accepting liability if a denial is ultimately filed within ninety days. N.C. Gen. Stat. § 97-18(d) (2003). The statute further provides that

[i]f at any time during the [prescribed] period . . . , the employer . . . contests the compensability of the claim or its liability therefor, it may suspend payment of compensation and shall promptly notify the Commission and the employee on a form prescribed by the Commission. The employer . . . must provide on the prescribed form a detailed statement of its grounds for denying compensability of the claim or its liability therefor. If the employer or insurer does not contest the compensability of the claim or its liability therefor within 90 days from the date it first has written or actual notice of the injury or death, or within such additional period as may be granted by the Commission, it waives the right to contest the compensability of and its liability for the claim . . . .

*Id.*

In the instant case, the Hospital initially paid benefits to Singletary. However, approximately two months after Singletary's accident at work, the Hospital filed a Form 61 "Denial of Workers' Compensation Claim," in which it provided the following reasons for denying her claim:

1) [Singletary's] disability is not the result of an accident or specific traumatic incident occurring on the job.

2) [Singletary] is not currently disabled.

3) Credibility.

Singletary insists that the proffered denial was insufficiently detailed and did not state any actual reasons for denying compensability and liability. However, even a cursory review of the reasons listed on the Form 61 reveals that the Hospital was concerned about whether Singletary was being honest about her condition and that it sought to challenge whether Singletary had, in fact, developed fibromyalgia and, if so, whether the condition was linked to her accident at work. Accordingly, we conclude that the Commission properly determined that the Hospital had provided valid reasons for

denying Singletary's claim and had provided sufficient detail in its statement of such reasons.

This assignment of error is overruled.

## IV.

[4] We next address Singletary's argument that the Commission erred by determining that the Hospital's defense of her claim was reasonable and by failing to assess sanctions against the Hospital. We disagree.

"If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1 (2003). The decision of whether to take such action is consigned to the discretion of the Commission, and will be left undisturbed absent an abuse of discretion. *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 398, 298 S.E.2d 681, 685 (1983).

Given the facts and circumstances of the instant case, we are unpersuaded that the Hospital's defense of Singletary's claims was necessarily unreasonable. Further, we discern no abuse of discretion in the Commission's decision not to impose sanctions.

This assignment of error is overruled.

## THE HOSPITAL'S APPEAL

We turn now to the Hospital's appeal. The Hospital argues that the Commission erred by (I) determining that Singletary's fibromyalgia was caused by her 7 October 2001 accident at work, and (II) determining that Singletary was entitled to benefits through 2 May 2002.

## I.

[5] We first address the Hospital's argument that the Commission erred by finding that Singletary's fibromyalgia was caused by the 7 October 2001 accident at work. The Hospital insists that Dr. Irwin's testimony was insufficient to establish such a causal nexus because it was based solely upon the temporal relationship between the accident and the development of Singletary's fibromyalgia and was, therefore, speculative. We disagree.

This Court must affirm findings of the Industrial Commission that are supported by competent evidence in the record. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000). Where the link between a plaintiff's condition and an accident at work involves a complex medical question, as in the instant case, a finding of causation must be premised upon the testimony of a medical expert. *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "Although medical certainty is not required, an expert's 'speculation' is insufficient to establish causation." *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Thus, " 'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). Accordingly, if an expert's opinion as to causation is wholly premised on the notion of *post hoc ergo propter hoc* (after it, therefore because of it), then the expert has not provided competent record evidence of causation. *Id.* at 232-33, 538 S.E.2d at 916.

For example, in *Young*, the Industrial Commission found that a claimant's fibromyalgia had been caused by an accident at work based solely on the opinion testimony of a Dr. Payne, who stated that "I think that [the claimant] does have fibromyalgia and I relate it to the accident primarily because, as I noted, it was not there before and she developed it afterwards. And that's the **only** piece of information that relates the two." *Id.* at 232, 538 S.E.2d at 916 (emphasis added). Our Supreme Court held that the Commission could not make a finding of causation based only upon this opinion because the opinion was premised entirely on Dr. Payne's application of *post hoc ergo propter hoc. Id.* The Court added:

> The speculative nature of Dr. Payne's expert opinion is reflected in his testimony that while he acknowledged that he knew of several other potential causes of Ms. Young's fibromyalgia, he did not pursue any testing to determine if they were, in fact, the cause of her symptoms. For instance, Dr. Payne conceded that he was aware of osteoarthritis in Ms. Young and that her sister was diagnosed with rheumatoid arthritis. However, when asked on cross-examination whether he had performed any tests to rule out other forms of rheumatoid disease or illness that could account for Ms. Young's symptoms, Dr. Payne testified that he had not. Indeed, when asked by defense counsel whether those tests had been conducted, Dr. Payne simply responded, "[T]hose studies

need to have been done." Additionally, in response to defense counsel's questions about other potential causes of Ms. Young's symptoms, Dr. Payne admitted that he did not attempt to ascertain whether plaintiff suffered from any viral or bacterial illnesses during the time between her injury and his diagnosis of fibromyalgia. This response followed the doctor's acknowledgment of case reports suggesting that fibromyalgia could be associated with a postbacterial illness reaction or a postviral reaction.

The speculative nature of the doctor's opinion is further reflected in his testimony regarding Ms. Young's gallbladder surgery in 1994. Plaintiff's surgery took place two years after her injury and seven months before her first visit with Dr. Payne. On cross-examination, the doctor acknowledged that surgery is an "event that is thought to trigger or aggravate fibromyalgia," and that, depending on how well Ms. Young tolerated her gallbladder surgery, it "could have aggravated [plaintiff's] fibromyalgia." The record therefore supports, through Dr. Payne's own admissions, at least three potential causes of fibromyalgia in Ms. Young other than her injury in 1992.

*Id.* at 232-33, 538 S.E.2d at 915-16.

The instant case is distinguishable from *Young*. It is true that Dr. Irwin's opinion on causation was informed by the temporal relation between Singletary's accident at work and her illness: "[S]he did not have a problem before the injury. Then starting from the injury, she had the problem and based on what I know as a result of that, I would say that, yes, they are related." However, Dr. Irwin also identified other potential causes of Singletary's fibromyalgia, and rejected them. For example, during his 17 January 2002 examination of Singletary, Dr. Irwin noted that Singletary had diabetes, and he tested her for diabetic peripheral neuropathy, another condition which may have produced her symptoms. The testing indicated that Singletary was not suffering from diabetic peripheral neuropathy. Likewise, in his deposition testimony, Dr. Irwin expressed an opinion that, notwithstanding Singletary's pre-existing sleep apnea and diabetes, her 7 October 2001 accident at work played a role in the development of her fibromyalgia:

> [SINGLETARY'S ATTORNEY]: If we assume that Ms. Singletary had been having sleep apnea, for example, that might be indicative of fibromyalgia or associated with the causal complex and other problems before October of 2001, but then she did have the

injury that's described in the Employee Health notes that you saw . . . would it be your opinion that there was any contribution of the pre-existing condition to the condition for which you saw her in January of 2002 or would it be separate?

[DR. IRWIN]: [Singletary's] sleep apnea certainly could [have] contribute[d] to it and [her] diabetes certainly could [have] as well.

[SINGLETARY'S ATTORNEY]: Okay. In your opinion, judging from what you see with the notes, would they likely have caused any disabling fibromyalgia in the absence of the injury she had in October [2001]?

[DR. IRWIN]: Sleep apnea can cause disabling fibromyalgia on its own.

[SINGLETARY'S ATTORNEY]: In her case, did it, in your opinion?

[DR. IRWIN]: Since she didn't have pain prior to the injury, I would say it didn't.

[SINGLETARY'S ATTORNEY]: Okay. If she had some pain prior to the injury but not as much as she had after the injury, can trauma aggravate a person's pre-existing fibromyalgia or activate a pre-existing predisposition toward it?

[DR. IRWIN]: Yes.

[SINGLETARY'S ATTORNEY]: In her case, if she did have some level of pain that allowed her to work and was of a much lesser nature than what she had afterwards and then she had this injury and then had the condition that you've been able to observe through the records and also through your own observations, would it be a fair characterization to say that her condition was aggravated by the injury[?]

[DR. IRWIN]: Yes.

Thus, Dr. Irwin's causation testimony was not mere speculation and was not entirely premised on the temporal relationship between Singletary's injury at work and her development of fibromyalgia. Rather, although this temporal relationship played a role in the diagnosis, Dr. Irwin also considered, tested for, and excluded other causes of her condition. Therefore, the Commission's finding of cau-

IN RE J.D.C.

[174 N.C. App. 157 (2005)]

sation, which was based upon Dr. Irwin's testimony, is supported by competent record evidence and must be affirmed.

This assignment of error is overruled.

<u>II.</u>

[6] The Hospital next contends that the Commission erred by awarding benefits to Singletary through 2 May 2002 because she failed to prove the extent of her disability. However, the record establishes that Dr. Irwin determined that Singletary was unable to work and that he wrote a note excusing her from work until 2 May 2002. As such, there is competent evidence to support the Commission's finding concerning the extent of Singletary's disability. This assignment of error is overruled.

For the foregoing reasons, the Commission's opinion and award is

Affirmed.

Judges TYSON and BRYANT concur.

═══════════

IN RE: J.D.C.