ROGER D. BLALOCK, Employee, Plaintiff v. SOUTHEASTERN MATERIAL d/b/a CUSTOM WOOD STRUCTURES, INC., Employer; BUILDERS MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA09-1530

(Filed 18 January 2011)

## Workers' Compensation— unreasonable defense—attorney fees

The decision of workers' compensation defendants to litigate plaintiff's complex medical case for three years was unreasonable where defendants denied treatment and compensation, based on self-proclaimed "common sense" in the face of unanimous medical testimony to the contrary. The Industrial Commission's opinion and award denying attorney fees under N.C.G.S. § 97-88.1 was reversed and remanded.

Appeal by Defendants and cross-appeal by Plaintiff from amended opinion and award entered 13 August 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 August 2010.

*Poisson, Poisson & Bower, PLLC, by Fred D. Poisson, Jr. and E. Stewart Poisson, for Plaintiff-Appellee/Cross-Appellant.*

*Lewis & Roberts, P.L.L.C., by Melissa K. Walker, Sarah C. Blair, and Brian D. Lake, for Defendant-Appellants.*

BEASLEY, Judge.

Roger D. Blalock (Plaintiff) alleges the Industrial Commission (Commission) erred in denying his motion for special attorneys' fees under N.C. Gen. Stat. § 97-88.1 of the Worker's Compensation Act (Act). Specifically, Plaintiff claims the Commission should have granted his motion for special attorney's fees because Custom Wood Structures, Inc. (Employer) and its insurer, Builders Mutual Insurance Company (Carrier) (collectively Defendants), defended the hearing without reasonable ground in violation of N.C. Gen. Stat. § 97-88.1. Because we agree with Plaintiff, we reverse that portion of the Commission's opinion and award concluding that attorney's fees under § 97-88.1 are not warranted and remand for entry of a finding that Defendants defended Plaintiff's claim without reasonable ground and a determination of the appropriate amount of attorney's fees under this statute.

BLALOCK v. SE. MATERIAL

[209 N.C. App. 228 (2011)]

Plaintiff, a long-term smoker of about thirty years, worked in construction as a carpenter for Employer for about three and one-half years. Plaintiff has a medical history of various conditions caused by his cigarette smoking, such as difficulty breathing, hoarseness, emphysema, and diffuse chronic obstructive pulmonary disease (COPD). While working for Employer on 21 October 2005, Plaintiff was tearing down a cinder block wall with a masonry saw and sledge-hammer, which caused large amounts of dust to accumulate. Plaintiff was given a painter's mask to wear and he continued sawing, but the mask was ineffective, as it was not designed for the type of protection necessary for the task. Plaintiff inhaled dust throughout the two-day period during which he was tearing down the wall. Having experienced troubled breathing and chest pains after performing this carpentry work, Plaintiff reported his acute symptoms to his supervisor. Over the next couple days, Plaintiff's shortness of breath continued, prompting him to visit his primary care physician, Dr. Kenneth D. Shank, on 24 October 2005. A chest x-ray revealed that Plaintiff had hyperinflated lungs, with evidence of underlying chronic obstructive lung disease.

During a follow-up visit on 16 November 2005, Plaintiff told Dr. Shank that his troubled breathing arose contemporaneously with his exposure to a large amount of dust at work and that his shortness of breath had continued since then. Dr. Shank then focused on Plaintiff's pulmonary problems and diagnosed him as having sustained an exacerbation of his underlying emphysema and COPD and possible pneumonitis. Having been Plaintiff's physician since May 2003, Dr. Shank knew Plaintiff smoked one to two packs of cigarettes per day for many years and had previously complained of hoarseness but noted that, even so, the 24 October 2005 visit was the first time he had ever reported an acute shortness of breath and chest pains. Dr. Shank believed that Plaintiff's underlying conditions resulted from his years of smoking and that his COPD had been exacerbated. Dr. Shank recommended that Plaintiff stop smoking and stay away from dusty areas.

On 12 December 2005, Dr. Herbie Bryan treated Plaintiff, who complained of worsening shortness of breath and vague chest pains. Plaintiff underwent a chest x-ray and a CT scan, after which Dr. Bryan diagnosed Plaintiff with dyspnea secondary to moderately advanced COPD. Observing that Plaintiff's emphysema was moderately advanced, Dr. Bryan noted that any work-related air pollution might have aggravated Plaintiff's breathing difficulties. Dr. Bryan recom-

mended certain treatments and also advised Plaintiff to immediately and completely cease smoking cigarettes. Plaintiff continued smoking through March 2006.

On 5 January 2006, Plaintiff filed a worker's compensation claim for injury to his lungs sustained on 21 October 2005 by "sawing [a] 9 x 9 x 9 feet hole in cinderblock wall 12 inches thick with a masonry saw and inhaling dust." Upon Defendants' denial of Plaintiff's claim for compensation, Plaintiff filed a Form 33 Request for Hearing on 13 February 2006. Following the deputy commissioner's hearing of the matter on 11 September 2006, the parties took the depositions of Dr. Shank, Dr. Jill Ohar, and Dr. Selwyn Spangenthal, which were received into evidence. The deputy commissioner issued an opinion and award on 31 October 2007, concluding that Plaintiff had suffered a compensable injury and instructing Defendants to pay medical treatment costs and weekly temporary total disability benefits under N.C. Gen. Stat. §§ 97-25 and 97-29, respectively. The opinion and award also directed Defendants' to pay reasonable attorney's fees in the amount of 25% of the benefits due Plaintiff, but no award of attorney's fees under N.C. Gen. Stat. § 97-88.1 was made. Both parties appealed to the Full Commission.

Defendants' appeal disputed the compensability of Plaintiff's claim while Plaintiff's arguments raised the issue of special attorney's fees under § 97-88.1, contesting the lack of findings of fact and award thereunder. Upon review of the record, the Full Commission filed an opinion and award on 28 July 2008, which, with minor alterations, affirmed the deputy commissioner's decision, including the award of reasonable attorney's fees at 25% of benefits due. The Commission, however, failed to address the issue of attorney's fees pursuant to § 97-88.1, and on 30 July 2008, Plaintiff filed a motion requesting that the Full Commission award him attorney's fees under § 97-88 and amend its opinion and award to address the issue of attorney's fees under § 97-88.1. Before the Commission could rule on Plaintiff's motion for attorney's fees, Defendants appealed the 28 July opinion and award to this Court on 21 August 2008. The Commission subsequently entered an order on 17 November 2008 acknowledging that it should have ruled on the issue of § 97-88.1 attorney's fees but that it was divested of jurisdiction while the case was pending on appeal.

Upon Plaintiff's 1 December 2008 motion to dismiss the appeal as interlocutory, this Court dismissed Defendants appeal without prejudice on 29 December 2008. Plaintiff then renewed his motion for

attorney's fees under § 97-88.1 on 13 January 2009, and in an amended opinion and award filed on 13 August 2009, the Commission ruled that Defendants had not been unreasonable in their defense of the action and denied Plaintiff's request for attorney's fees under § 97-88.1. The Commission concluded Plaintiff was entitled to reasonable attorney's fees under N.C. Gen. Stat. § 97-88 and ordered Defendants to pay the fees upon receipt of an affidavit or itemized statement from Plaintiff's counsel detailing the time expended preparing for and litigating the appeal. Plaintiff submitted affidavits from his counsel on 25 August 2009, and the Commission entered an order on 31 August 2009, finding the hours expended reasonable and awarding Plaintiff $2,625.00 in attorney's fees.

Defendants filed Notice of Appeal from the Commission's amended opinion and award on 31 August 2009, addressing the issue of compensability, as permitted by this Court's order dismissing their earlier appeal without prejudice. Plaintiff filed Notice of Cross-Appeal on 11 September 2009 and assigned cross related to the Commission's denial of § 97-88.1 attorney's fees. Defendants then filed a Motion to Withdraw Appeal on 19 January 2010, indicating to this Court that it had accepted Plaintiff's claim and would pay benefits pursuant to the 13 August 2009 decision, and Defendants' appeal was dismissed on 21 January 2010. Accordingly, Plaintiff's cross-appeal is the sole source of issues presented for our review. As such, we address only whether the Commission erred in failing to find that Defendants were unfoundedly litigious in their defense of this matter and in declining to tax Defendants with Plaintiff's attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.

---

The standard of review for an award or denial of attorney's fees under N.C. Gen. Stat. § 97-88.1 (2009) is a two-part analysis. *Meares v. Dana Corp.*, 193 N.C. App. 86, 93, 666 S.E.2d 819, 825 (2008), *disc review denied*, 366 N.C. 129, 673 S.E.2d 359 (2009). "First, '[w]hether the [defendant] had a reasonable ground to bring a hearing is reviewable by this Court *de novo*.'" *Id.* (quoting *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 50-51, 464 S.E.2d 481, 484 (1995)). If this Court concludes that a party did not have reasonable ground to bring or defend a hearing, then we review the decision of whether to make an award and the amount of the award for an abuse of discretion. *See Troutman*, 121 N.C. App. at 54-55, 464 S.E.2d 486 (holding "[t]he decision of whether to make such an award, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion"). In

conducting the first step of the analysis, the reviewing court should consider the evidence presented at the hearing to determine reasonableness of a defendant's claim. *See Raper v. Mansfield Sys., Inc.,* 189 N.C. App. 277, 288, 657 S.E.2d 899, 908 (2008); *see also Cooke v. P.H. Glatfelter/Ecusta,* 130 N.C. App. 220, 225, 502 S.E.2d 419, 422 (1998) (instructing that "the Commission (and a reviewing court) must look to the evidence introduced at the hearing" to determine whether a hearing has been defended without reasonable ground). As such, "[t]he burden [is] on the defendant to place in the record evidence to support its position that it acted on 'reasonable grounds.' " *Shah v. Howard Johnson,* 140 N.C. App. 58, 64, 535 S.E.2d 577, 581 (2000). Mindful that "[t]he test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness," *Cooke,* 130 N.C. App. at 225, 502 S.E.2d at 422 (internal quotation marks and citations omitted), we now review whether Defendants had reasonable ground to defend against Plaintiff's claim for compensation.

Under § 97-88.1: "If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1. "The purpose of this section is to prevent 'stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees.' " *Troutman,* 121 N.C. App. at 54, 464 S.E.2d at 485 (quoting *Beam v. Floyd's Creek Baptist Church,* 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990)); *see also Chaisson v. Simpson,* 195 N.C. App. 463, 484, 673 S.E.2d 149, 164 (2009) (stating that the Act's policy is "to provide a swift and certain remedy to an injured worker"); *Ruggery v. N.C. Dep't. of Correction,* 135 N.C. App. 270, 274, 520 S.E.2d 77, 80-81 (1999) (explaining the Act's aim "to provide a swift and certain remedy to an injured worker and to ensure a limited and determinate liability for employers," and mandating liberal construction of the Act such that "benefits are not to be denied upon technical, narrow, or strict interpretation of its provisions" (internal quotation marks omitted)).

Here, Plaintiff assigns error to the Commission's finding of fact that "Defendants' defense of and actions in this claim were not unreasonable" and conclusion that Plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1. Plaintiff alleges Defendants did

not present any evidence at the hearing demonstrating reasonable grounds for denying both compensability of Plaintiff's claim and the extent of Plaintiff's disability. We agree with Plaintiff. Where Defendants argue in their brief that Plaintiff's current condition and any resulting disability were more likely caused by his history of smoking than work-related dust inhalation, such is based on their non-expert "common sense" belief, which is in direct contradiction to all of the expert medical evidence in this case attributing the acute exacerbation of Plaintiff's underlying COPD to his inhalation of cinder block dust at work.

It is soundly established that employees are entitled to workers' compensation for claims based on work-related aggravation or acceleration of a pre-existing, non-work-related condition. Thus, "[w]hen a pre-existing, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent." *Morrison v. Burlington Industries*, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981); *see also Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) ("Clearly, aggravation of a pre-existing condition which results in loss of wage earning capacity is compensable under the workers' compensation laws in our state.").

It is equally well established that if the Commission finds that an accidental work-related injury aggravated or accelerated a pre-existing condition, apportionment between the work-related injury and the non-work-related condition is never proper. *See Konrady v. U.S. Airways, Inc.*, 165 N.C. App. 620, 629 n.1, 599 S.E.2d 593, 599 n.1 (2004) ("[A]pportionment is not appropriate when a work-related condition aggravates or accelerates a non-work-related condition."); *see also Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 390, 465 S.E.2d 343, 345-46 (1996) (explaining apportionment is possible only when the non-work-related infirmity "is neither accelerated nor aggravated by the compensable injury"); *Errante v. Cumberland County Solid Waste Management*, 106 N.C. App. 114, 119, 415 S.E.2d 583, 586 (1992) ("[A]pportionment is not permitted when an employee becomes totally and permanently disabled due to a compensable injury's aggravation or acceleration of the employee's nondisabling, pre-existing disease or infirmity.").

In this case, Plaintiff contended that his disability is the result of an aggravation or acceleration of his pre-existing COPD. Under the

aggravation and acceleration rule, the cause of his COPD is immaterial. Thus, the belief that Plaintiff's smoking likely caused his COPD is beside the point, and Defendants' emphasis on this impertinent fact is unavailing. The sole question as to causation here was whether a work-related accident—Plaintiff's inhalation of cinder block dust over two days—aggravated or accelerated his COPD. Three expert witnesses addressed this question and, without exception, each came to the same conclusion.

Dr. Ohar testified in her deposition that the cinder block dust "likely precipitated an exacerbation of COPD" and that the COPD "was most probably exacerbated by the dust inhalation." She explained: "I think I'm very confident of the diagnosis. I find that, you know, regardless of his work history, it's likely he had an exacerbation of COPD caused by the dust inhalation." She repeated this opinion at least four more times—in response to questions by both Plaintiff's and Defendants' counsel—expressing the same degree of certainty. Dr. Shank similarly testified that he treated Plaintiff following the cinder block work for "exacerbation of underlying emphysema." He concluded that Plaintiff suffered an "acute exacerbation of his underlying COPD, as well as a possible pneumonitis due to the dust and fume exposure." He confirmed that *both* the COPD *and* the acute exposure to the dust on 24 October 2005 were "significant contributing factors to the development [of] the symptomotology that he had on October 24."[1] Like Dr. Ohar, Dr. Shank repeated himself, stating again that Plaintiff's exposure to the cinder block dust "more likely than not aggravated a preexisting lung condition." Finally, Dr. Spangenthal, Defendants' own expert witness, reached an identical conclusion. He testified that while the COPD was consistent with cigarette smoking, he had concluded that Plaintiff's exposure to the cinder block dust "probably resulted in his acute respiratory problem." He explained the process:

> So what I think was happening here was that Mr. Blalock was a long-term cigarette smoker and probably had lost some lung

---

1. *See Perry v. Burlington Industries, Inc.*, 80 N.C. App. 650, 655, 343 S.E.2d 215, 218 (1986) (holding that even though plaintiff's smoking was "probably a more significant contributing factor than his occupation" to his chronic obstructive pulmonary disease, doctor's testimony that the plaintiff's occupation did contribute significantly to the plaintiff's lung disease supported award (internal quotation marks omitted)); *Swink v. Cone Mills, Inc.*, 65 N.C. App. 397, 400, 309 S.E.2d 271, 272-73 (1983) (reversing Commission's refusal to award benefits when plaintiff's evidence demonstrated that exposure to cotton dust together with a history of cigarette smoking and tuberculosis contributed to his chronic obstructive pulmonary disease). These are well-known opinions that are more than twenty years old that could hardly have been overlooked by Defendants.

function but not sufficient enough for it to be noticeable and affect his work. However, when he became exposed to the silica dust and the concrete he had an acute episode of airway inflammation and possibly even infection of the lower airways. Now when that occurred what happened was that he developed additional mucus production, additional bronchial spasm and at that point in time became short of breath.

Now, what happens when you have an acute inflammation from whatever cause, you might—it might take a lot of time to return back to your normal base—sort of baseline. But sometimes you do need treatment to get you back to that baseline. And I think that—so I['']m not saying that he is permanently disable[d] because of this exposure, what I['']m saying is that the exposure to all this dust resulted in him becoming symptomatic and brought out the fact that he did probably have underlying emphysema, which he had not noticed before.

Dr. Spagenthal then concluded:

So the reality is that yes, he was working prior to the event but I do believe that he still had underlying obstructive lung disease as a result of his cigarette smoking. What the event did was set him off and developed acute exacerbation with bronchial spasm, airway inflammation, etcetera, *and now without getting some type of treatment*, he is functioning at a lower level.

(Emphasis added.) Dr. Spangenthal also repeated his causation opinion over and over again throughout his deposition, including on cross-examination by defense counsel.

These three experts testified, in essentially identical language, that while Plaintiff's COPD was pre-existing and likely due to his cigarette smoking, his inhalation of silica dust and concrete at work more likely than not caused an acute exacerbation of that COPD that resulted in the symptoms he began exhibiting in October 2005. There is no evidence to the contrary. The invariable expert testimony in this case, in light of the above-cited authority regarding the compensability of injuries exacerbating an employee's underlying COPD caused by smoking, *see supra* note 1, demonstrates that there was no genuine basis for Defendants' denial or defense of Plaintiff's claim. Defendants' ignorance, or affirmative disregard, of these longstanding opinions directly contradicting their position renders their defense unreasonable and unfoundedly litigious under N.C. Gen. Stat.

§ 97-88.1. *See Troutman*, 121 N.C. App. at 52, 464 S.E.2d at 484 ("Defendant's ignorance of a 1986 North Carolina case directly on point provides no support for their contention that grounds for requesting a hearing in 1991 were reasonable. Such a construction would encourage incompetence and thwart the legislative purpose of N.C.G.S. § 97-88.1.").

Still, in response to Plaintiff's argument that none of the experts supported their position, Defendants attempt to manipulate Dr. Shank's testimony to support their position that it was not unreasonable to debate the cause of Plaintiff's injuries. They claim Dr. Shank testified that (1) any illness could have exacerbated Plaintiff's COPD, (2) he was familiar with Plaintiff's exposure to dusty and smoky environments, (3) Plaintiff's continued smoking more likely than not extended his recovery time, and (4) Plaintiff's inability to work was related to his underlying COPD, his unrelated back pain, and unrelated anxiety. Notably, Defendants do not actually quote Dr. Shank's testimony from the pages they cite, which, in fact, was:

Q. Wouldn't you say that Mr. Blalock's respiratory condition would be more likely the result of aggravating factors, such as his prior long-term smoking, continued long-term— continued smoking after the alleged exposure, along with other factors in the environment?

A. Because, when I hear aggravating, I think of the silicosis, because that's the aggravating factor on his underlying COPD.

When asked about the cause of Plaintiff's inability to work, Dr. Shank attributed it to the COPD "in combination with his back pain and anxiety, things like that all are contributing factors of his inability to work." While Defendants attempt to separate the COPD from the acute exacerbation, Dr. Shank's testimony indicates that in assessing Plaintiff's inability to work, Dr. Shank was talking about the COPD as exacerbated by the acute episode and not as it existed prior to that episode.

As for Defendants' suggestion that Dr. Shank's tesimony somehow supported their contention that Plaintiff's "voluntary exposure to aggravating factors" outside his work environment, such as cigarette smoke and other dust, was the actual cause of his condition, Dr. Shank confirmed otherwise during this colloquy with Plaintiff's counsel:

Q. Talking about the activities of riding horses and being in the smoky diner, and living on the dirt road and cigarette smoke, do any of those activities that we've discussed or those conditions that—that [defense counsel] has asked you about, do those change your opinion as to any of the reason [sic] for the acute onset of the shortness of breath back in 2005—in, excuse me, October of 2005?

A. No.

On the page that Defendants cite as indicating that Dr. Shank believed that "*any* illness" could have exacerbated Plaintiff's existing COPD, the testimony was actually:

Q. Based on your understanding, just so we have a clear picture, what was the—the, kind of, the baseline for Mr. Blalock back in June of 2005, let's say?

A. Okay. I think he was a man who probably had some chronic cough, chronic wheezing, could do activity, was able to work, always kind of hoarse in his voice. That's his respiratory status, subjectively, based on my recollection.

Q. And—but, in your opinion, but for this exposure to the silica dust and that environment that he had described to you, would Mr. Blalock have ever experienced that acute onset of the shortness of breath like he had in October of 2005 but for that—that experience?

A. *I think he could have gone on for a long period of time close to his baseline.* I think something like that was coming, but it would have been just from the cigarettes. I don't know when that would have been. Any illness could have done that to him.

Q. Uh-huh.

A. *But I think he could have gone on a long time.*

    . . . .

Q. And, excluding—if this alleged October of 2005 exposure had not occurred, given his prior condition, could he have gotten to a point where just smoking one cigarette could have aggravated his condition and caused acute onset such as that which he had experienced with this?

A.  Just smoking one cigarette? Probably not, but I think, event-
ually. Like I answered her question, his continued smoking
was going to put him, clinically, just right where he was
*years from now, months from now.* We'll never know.

(Emphases added.)

In other words, the only evidence upon which Defendants rely as
justifying their denial of Plaintiff's claim in fact establishes that the
cinder block episode accelerated Plaintiff's condition. This aggravation
and acceleration establishes that the condition is compensable with-
out apportionment.

Defendants' reliance on Dr. Shank's testimony that Plaintiff's
continued cigarette smoking may have prolonged his recovery does
not provide any better justification for Defendants' denial of the
initial claim. At best, this argument relates to the degree of Plaintiff's
disability, although even as to that point, Defendants cite no authority
justifying their position. Defendants, however, did not just litigate the
degree of disability. Rather, as described in their Form 61—denying
Plaintiff's claim because his employment "did not cause or signifi-
cantly aggravate his medical conditions"—Defendants contended up
until the date they withdrew their appeal that Plaintiff's condition
was not caused by his work. After all of the expert depositions were
taken, which established that the cinder block dust did in fact
aggravate Plaintiff's COPD, Defendants appealed the deputy
commissioner's opinion and award, arguing, in part, that she erred in
determining "that plaintiff suffered an acute exacerbation of his
underlying and pre-existing COPD as a result" of his exposure to dust.
Nothing in Dr. Shank's testimony or any other evidence supports
this contention.

Although Defendants also assert that evidence presented by Dr.
Spangenthal supports their position, they acknowledge that "Dr.
Spangenthal testified that plaintiff's exposure to cinder block dust
'probably' caused an exacerbation of his lung disease to the point that
he now suffers from shortness of breath." Defendants appear to be
arguing that they were nonetheless justified in denying Plaintiff's
claim because, according to Defendants, Dr. Spangenthal's opinion
was based on the timing of events, in violation of *Young v. Hickory
Bus. Furn.*, 353 N.C. 227, 538 S.E.2d 912 (2000) and, therefore, was
"insufficient to prove medical causation in this case." *See Young*, 353
N.C. at 232, 538 S.E.2d at 916 (holding "temporal sequence" was not
competent evidence of causation). Challenging one medical expert's

testimony as incompetent, however, does not justify defense of a claim when two other experts have previously testified in support of causation and no contrary medical testimony exists. In any event, Dr. Spangenthal did not testify based solely on a temporal sequence, as Defendants contend. He examined Plaintiff's prior medical records and compared x-rays taken prior to the acute episode to those taken after the acute episode, pointing out significant differences that supported his opinion. He also explained in detail the precise process by which exacerbation from inhaling silica dust and concrete can cause someone who suffers from COPD to become symptomatic and, at least, suffer temporary disability. Such testimony is not speculative, but rather is competent under *Young. See, e.g., Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 456, 640 S.E.2d 744, 756-57 (2007) (holding that expert testimony was admissible under *Young* when expert repeatedly testified that accident probably aggravated pre-existing condition, and opinion was not based "solely" on temporal relationship, but rather expert testified that plaintiff's description of accident was consistent with type of trauma that would result in plaintiff's condition); *Singletary v. N.C. Baptist Hosp.*, 174 N.C. App. 147, 156, 619 S.E.2d 888, 894 (2005) (holding that even though temporal relationship may have played role in diagnosis, expert's testimony was admissible because he "considered, tested for, and excluded other causes of condition").

In short, no medical evidence supports Defendants' outright denial of Plaintiff's claim. It is apparent that the sole basis for Defendants' denial is their non-expert belief that Plaintiff's cigarette smoking and exposure to other conditions was a more likely cause. As Defendants explain in their brief,

> [B]ased on a common sense evaluation of the facts of this case, defendants argued that plaintiff's current condition and any resulting disability is the result of plaintiff's thirty (30) year history of smoking one (1) to two (2) packs of cigarettes per day, his continued smoking subsequent to any dust exposure on or about October 19, 2005 or October 21, 2005, and plaintiff's voluntary exposure to aggravating factors present in plaintiff's environment outside of his employment with defendant-employer, rather than his alleged exacerbation from a one-time exposure to cinder block dust at work.

This argument merely underscores why attorney's fees are warranted under N.C. Gen. Stat. § 97-88.1. Defendants cannot substitute their

"common sense" for the opinions of experts. What is "common sense" to them is "grasping for straws" according to Dr. Ohar, who could not have more emphatically rejected Defendants' "common sense" theory. Time and time again, when defense counsel tried to garner support from Drs. Ohar, Spangenthal, and Shank for Defendants' theory, the expert witnesses not only rejected the theory, but explained in detail the medical reasons why they did so. Here, Defendants had no expert evidence supporting their causation theory. *See Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (explaining that when "the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury," which is one of the best established principles in workers' compensation law). At the point when they learned that their theory lacked any medical basis, they were obligated to cease denying and defending the claim based on a lack of causation.[2] While this Court has held that "[w]e do not . . . attribute to the General Assembly [in enacting § 97-88.1] an intent to deter an employer with *legitimate* doubt . . . from compelling the employee to sustain his burden of proof[,]" *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 664, 286 S.E.2d 575, 576 (1982) (emphasis added), the expert medical evidence leaves no room for any legitimate doubt here.

It is also striking that Defendants have cited no legal authority on appeal providing a basis for their prevailing when all of the expert witnesses testified that a work-related accident aggravated and accelerated Plaintiff's non-work-related COPD. They cite no authority supporting any contention that the fact that Plaintiff's COPD was likely caused by his cigarette smoking precludes a claim based on aggravation of that condition. Nor do they cite any authority suggesting that his disability after the cinder block incident would be non-compensable if cigarette smoking and the silica dust both contributed to that disability. Indeed, we know of no authority that supports Defendants' position.

In sum, Defendants lacked any evidentiary basis for their position and lacked any legal authority supporting their theory. Under these

---

2. It is ironic that Defendants have argued Dr. Spangenthal's testimony cannot support a finding of causation when they urge us to accept their own, non-expert speculation as being a "reasonable" basis for denying that Plaintiff's work in any way caused his condition.

McCRANN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[209 N.C. App. 241 (2011)]

circumstances, the Commission erred in determining that their defense of this claim was not unreasonable. Defendants' persistence in litigating a complex medical case for three years while denying an employee medical treatment and compensation, based on self-proclaimed "common sense" in the face of unanimous contrary medical testimony was unreasonable. Thus, we reverse this aspect of the Commission's amended opinion and award and remand for determination of the appropriate amount of attorney's fees authorized by N.C. Gen. Stat. § 97-88.1 under the circumstances.

Affirmed.

Judge GEER concurs.

Judge JACKSON concurred prior to 31 December 2010.