PAMELA JAMES, Plaintiff v. PERDUE FARMS, INC., Employer, Self-Insured
(Crawford & Company, Servicing Agent), Defendant

No. COA02-795

(Filed 7 October 2003)

**Workers' Compensation— fibromyalgia—not a listed compensable occupational disease—plaintiff's burden not met**

A workers' compensation claim arising from repetitive motion injuries was properly denied by the Industrial Commission. Although the Commission erred by requiring that plaintiff show that her fibromyalgia was a direct result of her employment rather than a significant contributing factor, the error does not warrant reversal because the Commission concluded that there was insufficient evidence that plaintiff's employment placed her at more risk for this condition than the general population, and that conclusion was supported by the findings.

Appeal by plaintiff from judgment entered 4 April 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 March 2003.

*Daniel F. Read for plaintiff-appellant.*

*Haynsworth, Baldwin, Johnson & Greaves, L.L.C., by Brian M. Freedman and J. Mark Sampson, for defendant-appellee.*

ELMORE, Judge.

Pamela James (plaintiff) appeals an opinion and award of the North Carolina Industrial Commission denying her workers' compensation claim.

Plaintiff was employed at the Perdue Farms, Inc. (Perdue) facility in Lewiston, North Carolina from 1984 to 1995. During her tenure at Perdue, plaintiff worked in various jobs, each of which required plaintiff to use her hands to perform repetitive motions. In 1989 or 1990, plaintiff began to experience pain in her hands and, later, in her neck, shoulders, and arms. In the following years, plaintiff sought treatment from a number of doctors, but the pain continued. Plaintiff's condition eventually led to a medical leave of absence in 1995 from which plaintiff did not return to work.

Plaintiff filed a claim for workers' compensation with the North Carolina Industrial Commission. On 15 May 2001, Deputy

Commissioner George T. Glenn, II issued an opinion and award in favor of plaintiff finding that plaintiff had developed carpel tunnel syndrome, fibromyalgia, chronic pain, and depression as a direct result of her employment. Defendant appealed to the Full Commission and, on 4 April 2002, the Commission issued an opinion and award reversing the Deputy Commissioner and denying plaintiff's claim. The Commission's single conclusion of law states the following:

> There was insufficient evidence to prove that plaintiff developed carpel tunnel syndrome, fibromyalgia, chronic pain and depression as a direct result of her position with Perdue Farms. There was insufficient evidence to prove that plaintiff's position placed her at an increased risk of developing these occupational disease [sic] as compared to general population not so employed.

Plaintiff gave notice of appeal to this Court on 25 April 2002.

On appeal to this Court, plaintiff contends that the Commission misapplied the law relating to compensability of occupational diseases. Specifically, plaintiff argues that the Commission erred in requiring her to prove that her fibromyalgia was a direct result of her employment, rather than to prove that her employment was a significant contributing factor in her condition. We agree that the Commission erred in requiring plaintiff to show that her fibromyalgia was a direct result of her employment. We hold, however, that the Commission's error relating to causation does not warrant reversal of its decision to deny plaintiff's claim.

On appeal of a decision of the Industrial Commission, this Court is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The evidence is to be viewed in the light most favorable to the plaintiff, and the plaintiff is entitled to the benefit of every reasonable inference that may be drawn therefrom. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

Fibromyalgia is not one of the enumerated compensable occupational diseases listed under section 97-53 of our General Statutes. Plaintiff, therefore, bears the burden of proving that she suffers from an occupational disease as defined by N.C. Gen. Stat. § 97-53(13)

(2001). *Poole v. Tammy Lynn Ctr.*, 151 N.C. App. 668, 672, 566 S.E.2d 839, 842 (2002). The North Carolina Supreme Court has established a three-part test to determine whether a condition is compensable under N.C. Gen. Stat. § 97-53(13), requiring a plaintiff to show: 1) that the condition for which plaintiff seeks compensation is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged;" 2) that the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation;" and 3) that there is "a causal connection between the disease and the [claimant's] employment." *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Although the Commission erred in its application of the third element of the *Rutledge* test, we hold that the Commission's denial of plaintiff's claim is still supported by plaintiff's failure to meet the first two elements of the test.

The third element of the *Rutledge* test requires plaintiff to demonstrate a causal link between the condition for which plaintiff seeks compensation and plaintiff's employment. *Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365. This element of the test is satisfied if plaintiff's employment "significantly contributed to, or was a significant causal factor in, the disease's development." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 354, 524 S.E.2d 368, 371 (2000). The Commission's use of the phrase "direct cause" in its conclusion of law, as opposed to "significant contributing or causal factor," suggests that the Commission did not apply the correct standard with respect to the causation element. On the facts of the case *sub judice*, however, the Commission's error does not warrant reversal of its decision to deny plaintiff's claim.

In addition to demonstrating a causal link between the plaintiff's condition and her employment, plaintiff must also satisfy the first two elements of the *Rutledge* test. These first two elements are met "if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Rutledge*, 308 N.C. at 93-94, 301 S.E.2d at 365. "The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation." *Id.* at 94, 301 S.E.2d at 365 (quoting *Booker v. Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979)). The Commission concluded that plaintiff had not satisfied her burden of showing that her employment exposed her to an increased risk of developing fibromyalgia.

The second sentence of the Commission's conclusion of law states the following: "There was insufficient evidence to prove that plaintiff's position placed her at an increased risk of developing these occupational disease [sic] as compared to general population not so employed." This conclusion relates directly to the first two elements of the *Rutledge* test, and there is no indication that the Commission incorrectly applied the law relating to those two elements.

Furthermore, the Commission's conclusion that there was insufficient evidence to prove that plaintiff's employment placed her at an increased risk of developing fibromyalgia is supported by the Commission's findings of fact, which *inter alia* record the testimony of Dr. Robert Hansen, a neurologist who examined plaintiff. Finding of fact number seventeen states that Dr. Hansen "felt that the work [in which plaintiff was engaged] was hard on the hands and there is an increased risk of developing hand pain and problems." However, Dr. Hansen was quick to distinguish between the pain caused by fibromyalgia and the condition itself. Finding of fact number twenty-two states that Dr. Hansen testified that plaintiff's work is "demanding" and "will make any of us hurt. It'll make people with fibromyalgia hurt more. So it clearly is significant in terms of increasing somebody's pain. But that doesn't cause the problem." The distinction between plaintiff's pain and her underlying condition is a significant one. Plaintiff must demonstrate that her employment exposed her to an increased risk of developing the *disease. Rutledge*, 308 N.C. at 93-94, 301 S.E.2d at 365. The Commission determined that plaintiff had not done so.

On the facts of the case *sub judice*, the Commission's error relating to causation does not warrant reversal of its decision to deny plaintiff's claim. The plaintiff must meet each element of the *Rutledge* test. Whether or not plaintiff can satisfy the causation element of the test under the correct legal standard, the Commission's decision to deny plaintiff's claim was still appropriate because plaintiff had not satisfied the first two elements of the test. The Commission's conclusion that plaintiff had not satisfied her burden of showing that her employment exposed her to an increased risk of developing fibromyalgia is supported by the applicable law and by the Commission's findings of fact. Accordingly, we affirm the Commission's decision to deny plaintiff's claim.

Finally, we note that plaintiff's brief discusses neither the Commission's conclusion of law as it relates to plaintiff's carpel tunnel syndrome or depression nor the sufficiency of the evidence sup-

porting the Commission's finding of fact number twenty-seven. To the extent that these issues may have been raised by plaintiff's assignments of error, they are therefore deemed abandoned pursuant to North Carolina Rule of Appellate Procedure 28(a).

Affirmed.

Judges MARTIN and HUDSON concur.