AMANDA GAY HAYES, EMPLOYEE, PLAINTIFF v. TRACTOR SUPPLY COMPANY, EMPLOYER AND KEMPER INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA04-553

(Filed 17 May 2005)

**Workers' Compensation— occupational disease—chemical sensitivity—injury—speculative causation**

The Industrial Commission did not err in a workers' compensation case arising from a claim for an occupational disease under N.C.G.S. § 97-53 for chemical sensitivity by finding no compensable injury, because: (1) an individual's personal sensitivity to chemicals does not result in an occupational disease compensable under our workers' compensation scheme, and there was competent evidence as to plaintiff's personal sensitivities predating her naphthalene exposure; and (2) the expert testimony failed to establish a causal connection between plaintiff's disease and defendant when it relied on mere speculation or possibility in concluding that plaintiff's exposure to naphtha-

lene at defendant's workplace was the cause of her subsequent symptoms.

Appeal by plaintiff from an opinion and award entered 8 January 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 February 2005.

*Edwards & Ricci, P.A., by Kenneth R. Massey, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Maura K. Gavigan and Bettina Mumme, for defendant-appellees.*

HUNTER, Judge.

Amanda Gay Hayes ("plaintiff") appeals an order from the Full Industrial Commission entered 8 January 2004 finding no compensable injury. As we find no error in the Commission's findings, we affirm this order.

The evidence presented to the Commission tended to show that plaintiff was employed by Tractor Supply Company ("defendant") from August 1992 through 8 October 1999. Plaintiff began work at defendant's Rocky Mount location in 1995, and remained there until 1999. Beginning in the fall of 1998, plaintiff began experiencing a significant increase in headaches, sinusitis, and bronchitis, for which she sought treatment. Her physicians at that time diagnosed the problem as hormonal.

In late September and early October of 1999, plaintiff was absent from work due to vacation. During that period, the area in which the store was located was affected by Hurricane Floyd. This weather event led to the store stocking a product known as Snake-A-Way, an odoriferous product containing the chemical naphthalene, for the first time since plaintiff had been in defendant's employ. The displays of Snake-A-Way were located in the vicinity of plaintiff's work area when she returned to work on 8 October 1999. Plaintiff complained about the smell to her manager and reported watery eyes and a scratchy throat.

On 9 October 1999, plaintiff discovered an outbreak of severe urticaria, commonly known as hives, and sought medical treatment from the Nash General Emergency Room several times within a twenty-four hour period. Plaintiff was ultimately hospitalized due to the severity of the hives. After review by several physicians, plaintiff was diagnosed as having chemical sensitivity.

Plaintiff continued to experience outbreaks of hives of varying severity over the following months. Plaintiff attempted to work in an elementary school program, but developed a reaction to cleaning supplies kept in a janitor's closet. Plaintiff also attempted employment at a veterinary clinic, but developed a reaction while using a flea and tick shampoo for dogs which contained pytherins.

Plaintiff filed a workers' compensation claim against defendant for two matters, one of which involved a knee injury unrelated to this appeal. Plaintiff's claim as to her occupational disease was heard by the deputy commissioner on 6 March 2001, who found plaintiff suffered from an occupational disease and awarded her temporary total disability for her condition. Defendant appealed the order to the Full Commission. The Full Commission reversed the deputy commissioner on 8 January 2004, finding plaintiff had failed to establish an occupational disease within the requirements of N.C. Gen. Stat. § 97-53(13) (2003). Plaintiff appeals from this order.

We first note the standard of review for appeals from the North Carolina Industrial Commission. It is well settled that "[i]n reviewing a decision of the Commission, this Court is 'limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.'" *Craven v. VF Corp.*, 167 N.C. App. 612, 615-16, 606 S.E.2d 160, 162 (2004) (citations omitted). Such findings supported by competent evidence are conclusive on appeal, even if there is plenary evidence for contrary findings. *See Jarrett v. McCreary Modern, Inc.*, 167 N.C. App. 234, 238, 605 S.E.2d 197, 200 (2004). "'An appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding."'" *Allen v. SouthAg Mfg.* 167 N.C. App. 331, 334, 605 S.E.2d 209, 211-12 (2004) (citations omitted).

Plaintiff contends that the Commission erred in finding plaintiff failed to meet her burden of proof in her claim of an occupational disease, chemical sensitivity, under N.C. Gen. Stat. § 97-53(13). We disagree.

A claim for an occupational disease not otherwise recognized in N.C. Gen. Stat. § 97-53 of our workers' compensation statutes may be established under the provision of § 97-53(13). *See James v. Perdue Farms, Inc.*, 160 N.C. App. 560, 561-62, 586 S.E.2d 557, 559 (2003). A plaintiff bears the burden of proof in showing she meets the require-

ments of the statute. *Id.* In *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983), our Supreme Court held that:

> For a disease to be occupational under G.S. 97-53(13) it must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

*Id.* at 93, 301 S.E.2d at 365 (citations omitted).

### A. Disease Characteristics and Exposure

Plaintiff contends the Commission erred in finding plaintiff failed to show her condition met the first two prongs of the *Rutledge* test. The Commission concluded plaintiff had failed to prove "that her employment with defendant-employer placed her at an increased risk of contracting the present condition" due to her personal sensitivities. We find no merit in plaintiff's contention.

Our courts have held that an individual's personal sensitivity to chemicals does not result in an occupational disease compensable under our workers' compensation scheme. *See Sebastian v. Hair Styling*, 40 N.C. App. 30, 32, 251 S.E.2d 872, 874 (1979). In *Nix v. Collins & Aikman Co.*, 151 N.C. App. 438, 566 S.E.2d 176 (2002), this Court upheld the Full Commission's finding that the plaintiff had failed to show an occupational disease. *Id.* at 444, 566 S.E.2d at 180. In *Nix*, competent evidence was presented that the plaintiff's personal sensitivities caused his reaction to chemicals at work. *Id.* at 443-44, 566 S.E.2d at 179-80. The Commission's finding that the plaintiff failed to show he was placed at an increased risk by his exposure to chemicals at work, as compared to the general public, was upheld by this Court, even though there was evidence to the contrary. *Id.* at 444, 566 S.E.2d at 180.

Here, the Commission found:

> 24. In the years prior to October 8, 1999, plaintiff experienced a myriad of reactions to various substances. Plaintiff's medical records indicate she has had long-standing allergic reactions to diesel fuel, gasoline, "prowl", a chemical pesticide used on rural farmland in plaintiff's community, cigarette smoke, perfume and other substances. In the one year prior to October 8,

1999, plaintiff received extensive medical treatment for migraine headaches including treatment at Cedar Healthcare in Raleigh and Boice Willis Clinic in Rocky Mount. Plaintiff also complained of continuous and consistent migraine headaches prior to October 8, 1999 to family physician Dr. David Browder.

The testifying experts all opined that plaintiff's employment with defendant, which stocked various chemicals, pesticides, and farming supplies, put her at a greater risk than members of the general public for developing chemical sensitivity. However, the experts also testified that plaintiff had a heightened peculiar susceptibility to chemicals and that her personal sensitivity predated the exposure to naphthalene on 8 October 2003. Thus, as there is competent evidence as to plaintiff's personal sensitivities pre-dating her naphthalene exposure, despite evidence to the contrary, it cannot be said as a matter of law that the Commission erred in its findings and conclusion.

### B. Causal Connection

Plaintiff further contends the Commission erred in finding that the expert testimony presented failed to establish a causal connection between plaintiff's disease and defendant. We disagree.

In *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 538 S.E.2d 912 (2000), our Supreme Court spoke to the issue of competent evidence for proof of causation of injuries in a workers' compensation claim. *Young* acknowledged that expert testimony was necessary to provide competent evidence of the cause of an injury, when complicated medical questions far removed from the experience and knowledge of laymen were involved. *Id.* at 230, 538 S.E.2d at 915. However, *Young* further held that:

> [W]hen such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. Indeed, this Court has specifically held that "an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility."

*Id.* (citations omitted). Evidence of a speculative nature includes conclusions which rest on the reasoning of the maxim " '*post hoc, ergo propter hoc*,' " that is, the fallacy of confusing sequence with consequence. *Id.* at 232, 538 S.E.2d at 916. "In a case where the threshold question is the cause of a controversial medical condition,

the maxim of *'post hoc, ergo propter hoc,'* is not competent evidence of causation." *Id.*

Here, the Commission considered the testimony of three physicians who evaluated plaintiff: Dr. Lieberman, Dr. Meggs, and Dr. Bretsel. The Commission found Dr. Lieberman's characterization of plaintiff's condition was predicated on the basis of the "temporal relationship between plaintiff's exposure history and the onset of her condition." The Commission further found that Dr. Brestal "base[d] his causation opinion regarding plaintiff's present condition solely upon the temporal relationship between plaintiff's alleged exposure to Snake-A-Way and subsequent urticaria breakout[.]" Finally, the Commission found Dr. Meggs testified that "plaintiff's present condition is a result of her personal chemical sensitivities" and that she "did not have an increased susceptibility to naphthalene, but instead had a hyperactivity to respiratory irritants." As a result, the Commission concluded that the expert testimony relied on mere speculation or possibility in concluding, *post hoc, ergo propter hoc,* that plaintiff's exposure to naphthalene at defendant's workplace was the cause of her subsequent symptoms. Thus, the Commission concluded such evidence was insufficient to establish the causal connection necessary to conclude plaintiff suffered a compensable occupational disease.

A review of the record reveals competent evidence to support the findings of the Commission. All of plaintiff's experts testified plaintiff had an unusually heightened chemical sensitivity. Further, Dr. Brestal testified he had not seen other patients manifest hives in reaction to naphthalene prior to plaintiff. Finally, both Dr. Brestal and Dr. Lieberman testified that the temporal sequence of events had formed the basis of their assessment. Thus, as there was competent evidence in the record to support the Commission's findings that expert testimony was speculative as to the issue of causation, the Commission properly found insufficient evidence of causation was presented by plaintiff to establish a compensable occupational disease.

We, therefore, decline to reach plaintiff's additional assignments of error.[1] As the evidence was sufficient to support the trial court's

---

1. Plaintiff contends the Commission erred in taking judicial notice of expert opinions rendered in previous unrelated cases before the Commission in making a finding that chemical sensitivity is not an occupational disease. Although we need not reach this issue as plaintiff failed to carry her burden of proof, as discussed *supra,* in showing she suffered from an occupational disease, we would remind the Industrial Commission to be cautious in taking judicial notice of matters of continuing scientific research.

finding that plaintiff failed to meet her burden of proof in showing she suffered from an occupational disease, the Commission's order is affirmed.

Affirmed.

Judges CALABRIA and JACKSON concur.