* * * * * * * * * * *
The undersigned have reviewed the prior Opinions and Awards based upon the record of the proceedings before Deputy Commissioner Chapman and the parties' submissions. Accordingly, the Full Commission enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. The Hartford Insurance Company is the carrier on this claim.
4. Plaintiff's average weekly wage was $370.80 as of July 18, 1997.
5. Plaintiff's compensation rate is $247.34.
6. The parties stipulated into evidence the following:
a. IC Forms 19, 60, 24 and 33.
b. Administrative Decision and Order.
c. Packet of medical records and reports.
 d. Report by Dr. Freedman submitted after the hearing before the Deputy Commissioner.
7. The depositions of Dr. Waivers, Dr. Merrill, Dr. Brown, Dr. Muchiteni, Dr. Freedman, Dr. Charles and Dr. Mallenbaum are a part of the evidence of record.
8. The medical report dated of Gerald M. Aronoff, Md. Dated August 8, 2003, and that of Gregory L. Duncan, Ph.D. dated October 29, 2003 and the latter's written response to the letter of January 16, 2004 from plaintiff's counsel are apart of the evidence received.
 * * * * * * * * * * *
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission makes the following
 FINDINGS OF FACT
1. The Full Commission Opinion and Award filed April 26, 2002 is fully incorporated herein by reference and is amended as hereinafter indicated.
2. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-one years old and a high school graduate, with additional training and certification in automotive work and training in auto body painting. Plaintiff served in the army and worked as a letter carrier as a contractor for the post office prior to his employment with defendant-employer. In January 1997, plaintiff began working for defendant-employer in Washington. Defendant-employer manufactured trucks and plaintiff's job involved painting the truck bodies.
3. On July 18, 1997, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment. He was in the process of putting a dolly under one end of a truck body when the other end fell off of a forklift and landed such that the dolly struck plaintiff forcefully in the chin, knocking him into the air. He was stunned by the blow but subsequently advised medical personnel that he did not believe that he lost consciousness. The laceration he sustained to his chin was sutured locally and he was then sent to Pitt County Memorial Hospital for evaluation. X-rays taken there revealed that there was a non-displaced fracture to the synthesis of his mandible. The emergency room physician consulted with Dr. Garrison, a plastic surgeon, regarding the fracture and with the trauma team regarding a possible closed head injury. A CT scan was also ordered and it showed no evidence of intracranial injury.
3. When Dr. Garrison evaluated plaintiff on July 19, 1997, plaintiff had no complaints regarding his vision, headaches or dizziness. She performed surgery that day to stabilize the mandible fracture using arch bars and intermaxillary fixation. She also revised the chin laceration repair.
4. Dr. Merrill examined plaintiff on December 2, 1997 and ordered a battery of tests to determine if there was an identifiable cause of his hypertension. Subsequently, testing established that his hypertension was not causally related to the injury. Further, A CT scan of plaintiff's head showed no evidence of any central nervous system injury.
5. Dr. Garrison released plaintiff to return to work on September 22, 1997. On October 22, 1997, Dr. Brown indicated that plaintiff was off all of his medications and could resume his normal activities. Insofar as the injuries plaintiff sustained on July 18, 1997 were concerned, plaintiff could have returned to work in his regular job by the time defendants submitted the Form 24. He did not attempt to return to work, however, and on October 21, 1997 Dr. Waivers advised that he should stay out of work due to his elevated blood pressure, a condition not found to be related to his work injury. Dr. Merrill subsequently disagreed with this recommendation
6. Plaintiff has also complained of memory and concentration problems since his injury. In association with his social security disability claim, he was evaluated by Dr. Mallenbaum, a clinical psychologist, on June 3, 1998. Dr. Mallenbaum performed some testing to assess plaintiff's intelligence and memory functions. Plaintiff tested in the high range of mental retardation, but his vocabulary appeared to be higher than that level. Memory scale testing showed his attention, concentration and verbal memory to be consistent with his intelligence scores, but he had problems with visual memory. Although Dr. Mallenbaum considered the possibility that he could have brain damage from trauma, the psychologist did not perform the battery of neuropsychological tests necessary to assess that question. Plaintiff's claim was subsequently reviewed by Dr. Charles, a psychologist with the Social Security Administration. However, Dr. Charles did not perform an independent evaluation of plaintiff and did not have plaintiff undergo further testing.
7. At the time of the prior Opinion and Award plaintiff had never been properly evaluated to determine whether he has sustained brain damage as a result of his injury at work. In view of his complaints of memory problems, the Full Commission found that an evaluation was reasonably necessary.
8. On August 8, 2003 Gerald Aronoff, M.D. was scheduled to perform a neuropsychological evaluation. However, his report reflects "Type of Independent Medical Examination: Pain Medicine; Psychiatry." In fact, Dr. Aronoff for clarity recommended neuropsychological testing as well as a neurological consultation to determine whether plaintiff's cognitive dysfunction predated the compensable injury by accident of 1997. Dr. Aronoff noted that plaintiff complained only of jaw pain in the emergency room after the accident. A CT scan performed shortly after the accident revealed no evidence of intracranial injury. On July 19, 1997, it was noted that plaintiff had no complaints of headaches. Dr. Aronoff made no finding of a brain injury. Dr. Aronoff noted plaintiff's depression but gave no opinion in his report whether this depression was causally related to plaintiff's compensable injury by accident. Dr. Aronoff stated that he could see no basis from the perspective of psychiatric functioning or in terms of plaintiff's headaches that would prevent plaintiff from returning to work.
9. On October 29, 2003 plaintiff was evaluated by Gregory Duncan, Ph.D., a psychologist, for an independent neuropsychological evaluation to determine plaintiff's current cognitive and emotional status. In his report Gregory Duncan, Ph.D. indicated that plaintiff has cognitive complaints related to major depression, but does not reference any "brain injury". For further clarification, plaintiff's counsel sent a letter on January 16, 2004 to Gregory Duncan, Ph.D. which asked several questions including "is it more likley than not that Mr. Grantham suffered a brain or head injury as a result of his above-described work accident." In response Gregory Duncan, Ph.D. wrote "a head injury with mild impairments is more likely than not." However, there is no such conclusion in his report. Gregory Duncan, Ph.D., stated in his letter that plaintiff's depression developed over time following the injury and is therefore related to plaintiff's experiences following the injury.
10. Plaintiff has reached maximum medical improvement. Plaintiff was released to return to work without restrictions seven years ago. The record was kept open to allow for evaluations to determine if there was a causal relation between any of plaintiff's claimed complaints and a possible head injury resulting from his 1997 injury. After review of the additional reports, there is insufficient evidence to find that plaintiff sustained a brain injury. Further, there is insufficient evidence from which to determine that plaintiff was unable to earn wages in the same or any other employment as a result of his injury by accident of July 18, 1997 following the date of the Deputy Commissioner's Opinion and Award on July 16, 2001.
11. As a consequence of the compensable injury by accident of July 18, 1997 plaintiff sustained permanent injury to six of his teeth.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as a matter of law the following
 CONCLUSIONS OF LAW
1. Post hoc ergo propter hoc, or "after this therefore because of this", is not competent evidence of causation. Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000). The opinion of Gregory Duncan, Ph.D., is based solely on the temporal relationship between plaintiff's compensable injury by accident of July 18, 1997 and the subsequent development of depression. Therefore, it is insufficient expert medical opinion evidence to make a finding of a causal connection between plaintiff's depression and his compensable injury by accident.Hayes v. Tractor Supply Co., ___ N.C. App. ___, 612 S.E.2d. 399 (2005), N.C. Gen. Stat. § 97-2(6).
2. There is insufficient evidence of record to determine plaintiff's disability after the date of the Deputy Commissioner's Opinion and Award of July 16, 2001. N.C. Gen. Stat. § 97-2(9). Russell v. Lowe's ProductDistribution, 108 N.C. App 762, 425 S.E.2d 454 (1993).
3. Plaintiff is entitled to $2,520.00 (6 × $420.00) for the permanent injury to six teeth resulting from the compensable injury by accident of July 18, 1997. N.C.I.C. Rating Guide.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Defendants shall pay $2,520.00 for the permanent injury to plaintiff's six teeth as a result of the compensable injury by accident of July 18, 1997.
2. Plaintiff's claim for further benefits must be and is hereby DENIED.
3. Defendants shall pay the costs.
This the 31st day of October 2005.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ THOMAS J. BOLCH COMMISSIONER