***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. This dispute arose from an incident whereby plaintiff claimed to have contracted an occupational disease on or around May 7, 2004. Plaintiff claimed that he contracted "contact dermatitis" as a result of handling lumber at work.
3. An employment relationship existed between plaintiff and the Coastal Group at the time of the alleged incident or exposure of May 7, 2004.
4. Companion Property and Casualty Group was the carrier of the Coastal Group's workers' compensation insurance at the time of plaintiff's alleged injury or occupational disease.
5. Defendants contend that plaintiff's average weekly wage at the time of the alleged exposure of May 7, 2004, was approximately $250.54, yielding a compensation rate of approximately $167.03 pursuant to a Form 22 wage chart. Plaintiff contends that his average weekly wage at the time of the alleged incident of May 7, 2004, was approximately $253.33, yielding a compensation rate of approximately $168.00. The Defendants submitted a Form 22 wage chart to the Commission but there was insufficient information on said chart to calculate an accurate average weekly wage.
6. Plaintiff is currently not working with the Coastal Group, having not worked since on or around November 2004.
7. Plaintiff worked for the Coastal Group as a forklift operator at the time of his alleged incident or exposure of May 7, 2004, eight hours per day, at approximately 40 hours per week.
 ***********
Based on the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On May 8, 2004, plaintiff was employed by the Coastal Group, Inc.
2. Coastal Group is a temporary staffing agency and as such, placed plaintiff in a number of temporary labor assignments over the course of his employment.
3. Plaintiff worked as a forklift operator at the North Carolina State Port Authority through Coastal Group. This assignment lasted approximately five weeks from April 5, 2004 until May 13, 2004.
4. During his assignment at the Port Authority, plaintiff was exposed to limited amounts of water, moisture, sweat, mold, and both treated and untreated wood. Plaintiff typically spent one-half of each day operating a forklift.
5. Plaintiff always wore gloves while working. The ground was typically dry, as was the wood, unless it had been raining. The amount of treated wood touched by plaintiff was limited to only a portion of the small sticks used to separate plastic wrapped bundles of untreated wood.
6. Plaintiff was treated on May 11, 2004 by Daniel Shapiro, PA-C, for a rash on his hands, which was diagnosed as contact dermatitis. Shapiro could only speculate that his work may have been a contributing cause of this condition.
7. Plaintiff again saw Shapiro on June 21, 2004, one month after leaving the Port Authority, for a rash on his right foot, which was diagnosed as a foot fungus. Shapiro did not attribute this condition to plaintiff's employment.
8. Shapiro treated plaintiff on January 6, 2005, for a rash which he diagnosed as scabies. Shapiro indicated at that time that he did not believe the problem to be work related, since plaintiff had not been working at the Port Authority for several months prior to the visit.
9. None of the conditions for which physician assistant Shapiro treated plaintiff were the same type of problem. Shapiro also believes it would not have been possible for the problems for which he treated plaintiff on January 6, 2005, to have "spread" to the other parts of plaintiff's body.
10. After each visit, Shapiro released plaintiff to full duty work with no restrictions.
11. Plaintiff was seen by Dr. Michael D. Sullivan on January 18, 2005, complaining of a rash on his hands and feet. Dr. Sullivan is a dermatologist.
12. Dr. Sullivan diagnosed plaintiff with vesicular palmoplantar eczema.
13. Plaintiff had a predisposition to vesicular palmoplantar eczema, possibly predating his work related exposure. In fact, common factors in the environment, to which everyone is exposed, can cause the condition or flare-ups.
14. Dr. Sullivan testified, and the Full Commission finds as fact, that there is no way of being able to determine the cause of plaintiff's condition, as the cause of vesicular palmoplantar eczema is unknown. Dr. Sullivan indicated that plaintiff had an unknown predisposition to develop the condition, and the "day it chose to come out was the trigger while he was working." Plaintiff's work exposure caused a temporary flare-up of his condition.
15. It is difficult to pinpoint a single factor that causes vesicular palmoplantar eczema or that makes it worse. Also, vesicular palmoplantar eczema is not a condition specific to individuals who work with treated lumber in similar environments as the one in which plaintiff worked.
16. Plaintiff continues to have the same condition, but any current flare-ups are unrelated to his work related exposure.
17. Plaintiff has a predisposition to developing skin problems
18. If plaintiff suffered from eczema in February 2005, he would have contracted that condition from some source other than his employment with Coastal Group.
19. Plaintiff was the only one of more than 100 Coastal Group employees to work in the lumberyard at the Port Authority who claimed any type of rash, blister, or skin condition.
20. Lori McKoy, Human Resources Director at the Port Authority, was unaware of any skin disease claims made by any permanent or temporary employment at the Port Authority, other than plaintiff, since at least 1995.
21. Plaintiff never gave notice to Coastal Group or to anyone at his temporary assignments that any of his absences or tardinesses was due to any medical problems or conditions.
22. Neither Shapiro nor Dr. Sullivan has ever placed plaintiff out of work or restricted him from any work activities.
23. Shapiro believes that plaintiff can work at full duty, and that if he were suffering from any disability currently, it would not be related to his employment with Coastal Group.
24. Dr. Sullivan indicated that plaintiff could work at least a sedentary-type job, possibly a light-duty job, and that he could possibly return to heavy manual labor if his flare-ups subsided.
 ***********
Based on the evidence of record and reasonable inferences therefrom, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that he suffers from a compensable occupational disease. N.C. Gen. Stat. § 97-53.
2. Plaintiff's condition is an ordinary disease of life to which the public is equally exposed.
3. Plaintiff has been unable to show any causal connection between his skin problems and his occupation, or that his employment exposed him to a greater risk of developing skin problems than the general public.
4. The medical community is uncertain as to the cause of vesicular palmoplantar eczema. This uncertainty, coupled with an opinion that since the condition first appeared after exposure to irritants on the job site those irritants caused the condition, presents a classic situation for application of the North Carolina Supreme Court's decision in Young vs. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912
(2000).
5. The testimony of both of plaintiff's medical caregivers establishes that plaintiff suffers from a pre-existing personal sensitivity to certain substances. Plaintiff's personal sensitivity, not any occupational exposure, caused the skin problems of which he complains.Hayes vs. Tractor Supply Co., 170 N.C.App. 405, 612 S.E.2d 399 (2005).
6. Plaintiff has failed to prove than he is disabled under the North Carolina Workers' Compensation Act.
 *********** AWARD
1. Under the law, plaintiff's claim for benefits under the North Carolina Workers' Compensation Act for occupational illness must be, and the same is, DENIED.
2. Each Party shall bear its own costs.
This 21st day of November 2006.
 S/_____________ THOMAS J. BOLCH, COMMISSIONER.
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE, COMMISSIONER.
 S/____________ BUCK LATTIMORE, CHAIRMAN.