***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Gillen.
 ***********
At the hearing before the Deputy Commissioner, the following was entered into evidence as:
 EXHIBITS *Page 2 
Defendants' Exhibit 1 — Group of documents including defendants' proposed pre-trial agreement, Industrial Commission Forms filed in this matter and plaintiff's medical records, all collectively paginated 1-382.
 *********** ISSUES PRESENTED
1. Whether plaintiff is entitled to medical and/or indemnity benefits as a result of the January 2, 2004 admittedly compensable injury?
2. Whether plaintiff's psychological condition is compensable under the Act?
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. All parties are properly before the Industrial Commission.
2. The Industrial Commission has jurisdiction of this claim's parties and subject matter.
3. All parties are correctly designated. There is no question as to the misjoinder or non-joinder of the parties.
4. All parties to this matter are subject to and bound by the North Carolina Workers' Compensation Act.
5. Plaintiff was born on October 4, 1960 and completed high school. Plaintiff also studied a floral arrangement curriculum at a community college.
6. Plaintiff's only employment after high school was 30 years as a quality control inspector of bottles with defendant-employer. The tasks required by this job included the *Page 3 
observation and manipulation of individual bottles of varying sizes as well as lifting crates of bottles. These crates, when full, would weigh up to 40 pounds. Plaintiff worked 40 to 48 hours per week in this position.
7. On January 2, 2004 plaintiff suffered an injury by accident arising out of and in the course of her employment with defendant-employer when she fell while running up a set of stairs. Defendants admitted the compensability on a Form 60 dated March 30, 2004. The Form 60 states that plaintiff injured her "neck and back." The Form 60 also reflects that defendants began paying temporary total disability benefits on March 29, 2004.
8. Plaintiff attempted to return to work with defendant-employer on several occasions. As of the date of the hearing before the Deputy Commissioner, plaintiff had last worked for defendant-employer in the summer of 2009.
9. Plaintiff first sought medical treatment at Wilson Immediate Care on January 11, 2004. Dr. Chanson DeVaul's medical note from this visit reflects diagnoses of cervical sprain, right arm contusion, chest muscle strain, and low back pain.
10. On January 14, 2004 plaintiff was seen by Dr. Lawrence Krabill at Wilson Immediate Care. Dr. Krabill's note from this visit indicates that he released plaintiff to return to regular work.
11. Plaintiff followed up at Wilson Immediate Care on February 24, 2004. The medical note from this visit indicates that x-rays of the cervical spine showed mild degenerative changes at C5-C6 but no paravertebral soft tissue swelling.
12. Plaintiff then came under the care of Dr. Lisa Nocera and Dr. Kurt Voos at Pitt County Memorial Hospital. Plaintiff received a cervical epidural steroid injection on June 7, 2004 and a nerve root block on July 2, 2004. She initially indicated a desire to proceed with spinal *Page 4 
surgery but postponed the procedure several times in 2005 before eventually deciding against undergoing surgical intervention. As a result, it was recommended that plaintiff participate in physical therapy and undergo a functional capacity evaluation.
13. On August 9, 2005, plaintiff underwent a functional capacity evaluation, the results of which showed that "[plaintiff performed] in an overall medium level of work for an eight-hour day without the use of any form of pain medication on the day of testing. . .," that "[plaintiff] qualified fully for all her personally relayed job demands, with the exception of push/pulling 40 lbs. or less. . ., " and that "[plaintiff] presented with numerous inconsistencies and abundant self-limiting behavior throughout testing. . . ."
14. On August 31, 2005 Dr. Voos released plaintiff to return to medium duty work on September 12, 2005 and assigned a permanent partial disability rating of 3 percent to the back.
15. On September 27, 2005 Plaintiff was seen again at Wilson Immediate Care, where she complained of "back pain which is primarily on the right side of the neck and seems to be getting worse with time with radiating pains down the right arm." The office note from this visit indicates that: "It was noted by the charge nurses that [plaintiff] was adamant about not returning to work and threatened to take all of her Flexeril. . . . [I]n observing her leaving the office there was no evidence at all of any pain or limitations with moving her right arm. She was able to open the door of the car and move objects from her left hand to the right hand to the passenger seat when she got in and drove off."
16. While plaintiff was at Dr. DeVaul's office on November 12, 2005, she reported to have fallen out of her chair in the waiting room and was transported to the Emergency Room. The record reflects that Dr. DeVaul's office contacted the Emergency Room and "[i]t was related *Page 5 
that a rather dramatic presentation continued in the [Emergency Department], and this was related by the charge nurse."
17. On January 5, 2006, plaintiff was seen by Dr. Lawrence Krabill at Wilson Immediate Care. Dr. Krabill's noted that plaintiff "is repeatedly complaining of extreme and horrible pain which is debilitating. Yet, when she stood up to show me where she was hurting, she moved pretty quickly, and then later, when I asked her to stand and walk, she stood up very slowly and shuffled very pitifully. She has her pajamas on but a lot of gold jewelry and 2 in. painted nails. States she can't sit for more than 10-15 min. due to the back pain she is having."
18. On February 26, 2006, Dr. Voos again released plaintiff to return to work at medium duty and assigned a 3% permanent partial disability to plaintiff's back.
19. On October 6, 2006 plaintiff was involved in a motor vehicle accident. The medical records documenting the incident explain that a van plaintiff was traveling in was struck on its side and sustained moderate damage. Plaintiff was not wearing restraints at impact. Plaintiff, who claimed to suffer increased pain following this incident, sought treatment at Wilson Medical Center and at Hooper-Thurston Elite Chiropractic.
20. On August 25, 2008 plaintiff was again examined by Dr. Voos, who documented no change in rating and no change in previous restrictions. According to the August 25, 2008 medical note, plaintiff threatened suicide while in Dr. Voos' office. The Pitt County Sheriff's Office was contacted to transport plaintiff to the emergency room for a psychological evaluation.
21. Dr. C. Thomas Gualtieri, a psychiatrist, performed a neuropsychiatric evaluation of plaintiff on September 27, 2010. The report generated by this evaluation explains "In terms of the relationship between the event at work and [plaintiff's] current condition, it is hard to make a case. It would appear that [plaintiff's] premorbid psychological status contributed to an extreme *Page 6 
reaction to a minor accident. The somataform pain disorder that she developed was not, strictly speaking, caused by or aggravated by the accident at work. Rather, the accident was a nidus around which her psychiatric condition could coalesce. I do think her somatoform pain disorder was the first stage of her overt breakdown."
22. Dr. Gualtieri opined that plaintiff had a premorbid psychological condition and that plaintiff's current psychological condition was not caused by her fall at work. Dr. Gualtieri specifically testified that "I see no evidence that [plaintiff] has Post Traumatic Stress Disorder."
23. Dr. Edwin Hoeper, a psychiatrist, indicated that plaintiff suffered from Post Traumatic Stress Disorder and that plaintiff's psychological condition is related to the January 2, 2004 workplace fall.
24. Dr. Voos, who treated plaintiff off and on over a period of four years, opined that plaintiff's cervical spine condition was caused by the workplace fall of January 2, 2004.
25. Dr. Raymond Baule indicated that plaintiff was at maximum medical improvement from her spinal injuries stemming from the January 2, 2004 workplace fall as of the date of his deposition on April 8, 2010, and that plaintiff suffers a 10% permanent partial disability to her spine.
26. Regarding plaintiff's psychological condition, having considered the testimony of Dr. Gualtieri and Dr. Hoeper, as well as the documentary and other evidence, the Full Commission gives greater weight to the testimony of Dr. Gualtieri.
27. Regarding the permanent partial impairment to plaintiff's back, having considered the testimony of Dr. Voos and Dr. Baule, taken with the documentary and other evidence, the Full Commission gives greater weight to the testimony and evaluations of Dr. Voos. *Page 7 
28. Plaintiff has made inaccurate and/or incomplete reports to her medical providers regarding her pain and limitations. These reports colored the diagnoses, courses of treatment, and physical restrictions provided to plaintiff by her doctors.
29. Plaintiff considers herself to be a current employee of defendant-employer who took a voluntary, temporary layoff.
30. On January 2, 2004 plaintiff suffered an admittedly compensable injury by accident to her cervical spine and lumbar spine when she fell at work. This incident constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences.
31. The preponderance of the competent, credible evidence shows that plaintiff's cervical spine and lumbar spine conditions were caused by the January 2, 2004 workplace accident.
32. The preponderance of the competent, credible evidence does not establish that plaintiff's psychological problems were a direct and natural result of or causally related to the January 2, 2004 injury. Furthermore, the preponderance of the evidence does not establish that the January 2, 2004 injury aggravated, accelerated or exacerbated plaintiff's psychological problems.
33. The preponderance of the evidence does not establish that plaintiff suffered a compensable psychological injury as a result of the January 2, 2004 accident.
34. The credible medical and vocational evidence of record shows that, as a result of the January 2, 2004 accident, and taking into account both her physical and vocational limitations, plaintiff was totally disabled from January 3, 2004 through September 11, 2005. *Page 8 
35. In this case there is insufficient evidence of record to show that plaintiff, subsequent to her being released to return to work as of September 12, 2005, conducted a reasonable job search.
36. Given the medical evidence and testimony, plaintiff failed to prove by a preponderance of the evidence that she suffered any compensable disability as defined by the Act as a result of the January 2, 2004 workplace accident, after September 11, 2005.
37. Given the testimony and medical records in evidence, as of August 31, 2005 plaintiff had reached the end of the healing period and maximum medical improvement regarding her January 2, 2004 workplace cervical spine and lumbar spine injury, having sustained a 3% permanent partial impairment to her back as a result of this injury.
38. Plaintiff's average weekly wage is $630.47, resulting in a weekly compensation rate of $420.33.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. On January 2, 2004 plaintiff sustained a compensable injury by accident to her cervical spine and lumbar spine when she fell while working for defendant-employer. N.C. Gen. Stat. § 97-2(6). Defendants accepted plaintiff's cervical spine and lumbar spine injury as compensable using a Form 60 dated 30 March 2004. Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005); Reinninger v.Prestige Fabricators, Inc., 136 N.C. App. 255, 523 S.E.2d 720 (1999);Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
2. As a result of the January 2, 2004 injury to her neck and back, plaintiff was totally disabled and is entitled, to the extent it has not been paid, temporary total disability compensation *Page 9 
at the rate of $420.33 per week for the period from January 3, 2004 through September 11, 2005. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distribution,108 N.C. App. 762 (1993).
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the January 2, 2004 compensable cervical spine injury and lumbar spine injury when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19);97-25; 97-25.1.
4. The Form 60 filed in this matter accepting the compensability of the cervical spine and lumbar spine injuries does not create a presumption of continuing disability. The burden of proving compensable disability remains with plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). Disability is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). A plaintiff may meet this burden by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762 (1993). In the present case plaintiff was released to return to work as of September 12, 2005. Plaintiff presented insufficient evidence from which to determine that she conducted a reasonable job search subsequent to that date. Plaintiff did not prove, as a *Page 10 
result of the January 2, 2004 accident, that at any time subsequent to September 11, 2005 she was incapable of work in any employment, that she was unable to obtain employment after a reasonable effort, or that it was futile for her to seek employment because of other factors. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra. Therefore, in this case plaintiff failed to meet her burden of proving the existence and extent of disability, subsequent to September 11, 2005, that was caused by the compensable accident. N.C. Gen. Stat. § 97-2(9); Hilliard v. Apex CabinetCo., 305 N.C. 593 (1982); Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154 (2001); Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228 (1996).
5. Medical testimony that relies on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v.Hickory Bus. Furn., 353 N.C. 277, 538 S.E.2d 912 (2000); Seay v.Wal-Mart Stores, Inc., 180 N.C. App. 432, 637 SE2d 299 (2006). In this case plaintiff made inaccurate or incomplete reports to her medical providers regarding her pain and limitations. These reports colored the diagnoses, courses of treatment, and restrictions provided to plaintiff by her doctors.
6. As a result of plaintiff's January 2, 2004 compensable injury and the resultant 3% permanent partial disability to her lumbar spine, plaintiff is entitled to permanent partial disability compensation at the rate of $420.33 per week for 9 weeks, or $3,782.97. N.C. Gen. Stat. § 97-31(23).
7. In controversy is the compensability of plaintiff's psychological condition. In the "description of injury" section on the Form 60, defendants accepted the compensability of the cervical and lumbar spine injuries, writing: "The injured worker was running up the steps and fell. She injured her neck and back." In their footnote, thePerez court anticipates facts similar to those at bar, in which a defendant accepts an injury with a Form 60, and then the plaintiff claims *Page 11 
that additional injuries were caused by the same compensable event: "We can conceive of a situation where an employee seeks medical compensation for symptoms completely unrelated to the compensable injury. But the burden of rebutting the presumption of compensability in this situation, although slight, would still be upon the employer." Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005).
8. Given the Perez footnote, the Parsons presumption arguably applies to plaintiff's psychological condition given the Form 60 filed in this case. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005); Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). However, through the presentation of evidence in this case, defendants have rebutted any presumption that plaintiff's psychological problems are related to the January 2, 2004 compensable accident. Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005);Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
9. The Parsons presumption having been rebutted, the burden is with plaintiff to prove the compensability of her psychological condition. Because causation in this case involves "complicated medical questions far removed from the ordinary knowledge and experience of laymen," only an expert is qualified to provide competent opinion evidence on this issue. Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000) (quoting Click v. PilotFreight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980)). Moreover, to establish causation in cases such as this, the expert opinion must "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
10. The competent evidence in this case proves by a preponderance of the evidence that plaintiff's psychological problems were not caused by the January 2, 2004 accident, nor were her preexisting psychological problems materially exacerbated or aggravated by the work *Page 12 
incident. N.C. Gen. Stat. § 97-2(6); Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus. Furn.,353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000); Hodgin v. Hodgin,159 N.C. App. 635, 583 S.E.2d 362 (2003); Peagler v. Tyson Foods,Inc., 138 N.C. App. 593, 532 S.E.2d 207 (2000).
11. Furthermore, it is an established principle in North Carolina that a plaintiff's personal sensitivity cannot result in a compensable condition as defined by the Act. Hayes v. Tractor Supply Co.,170 N.C. App. 405; 612 S.E.2d 399 (2005); Sebastian v. HairStyling, 40 N.C. App. 30, 251 S.E.2d 872 (1979).
12. The greater weight of the competent evidence in this case proves by a preponderance of the evidence that plaintiff's psychological problems are not causally related to the January 2, 2004 injury, and furthermore that the January 2, 2004 incident did not materially exacerbate or aggravate any of plaintiff's psychological problems. N.C. Gen. Stat. § 97-2(6); Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Hodgin v. Hodgin,159 N.C. App. 635, 583 S.E.2d 362 (2003).
13. Defendants are entitled to a credit for all wages and workers' compensation disability payments paid to plaintiff subsequent to January 2, 2004. N.C. Gen. Stat. § 97-42; Moretz v.Richards Assocs., Inc., 316 N.C. 539, 342 S.E.2d 844 (1986).
14. Plaintiff's average weekly wage is $630.47, which results in a weekly workers' compensation rate of $420.33. N.C. Gen. Stat. § 97-2(5).
 ***********
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD *Page 13 
1. Given the preponderance of the credible medical and vocational evidence of record, and plaintiff's compensable injury of January 2, 2004, defendants shall pay plaintiff, subject to the attorney's fee approved below and the credit due defendants for the wages and workers' compensation disability payments plaintiff has already received, temporary total disability compensation at a rate of $420.33 per week for the period from January 3, 2004 through September 11, 2005.
2. For the permanent partial disability of plaintiff's back, defendants shall pay plaintiff, subject to the attorney's fee approved below and the credit due defendants for the wages and workers' compensation disability payments plaintiff has already received, permanent partial disability compensation at the rate of $420.33 per week for 9 weeks, or $3,782.97. This amount shall be paid in a lump sum.
3. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall provide plaintiff all medical treatment, incurred or to be incurred, for plaintiff's cervical spine and lumbar spine conditions, necessitated by the January 2, 2004 injury.
4. Plaintiff's request for benefits for her psychological condition must be, and hereby is, DENIED.
This the ___ day of November, 2011.
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING: *Page 14 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1