The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer, North Carolina Department of Transportation, which was self-insured on October 2, 2007.
5. Pursuant to the Form 22 submitted, plaintiff's average weekly wage was $599.40, yielding a compensation rate of $399.61.
6. Stipulated Exhibit 2, a notebook of various exhibits, including:
 i. Industrial Commission Forms;
 ii. A Mediation Order;
 iii. Discovery Responses; and
 iv. Medical Records.
 *********** ISSUES
1. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on October 2, 2007, and if so, to what, if any indemnity and medical compensation is plaintiff entitled.
2. Whether defendant is entitled to a credit for any short term or long term disability compensation payments made to plaintiff.
3. Whether plaintiff or defendant is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. *Page 3 
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 61 years old.
2. Plaintiff had worked for defendant for approximately five years as a driver's license examiner, as of the hearing date. Plaintiff primarily worked in a cubicle in the driver's license office, but also conducted road tests with drivers.
3. Prior to October 2, 2007, defendant-employer placed new desk floor mats in its offices. According to plaintiff's testimony, these new mats were bumpy, which made it "just almost impossible" for him to move his chair back and forth. Plaintiff stated that the top of the mat had little raised circles about every two inches apart. Plaintiff indicated that on October 2, 2007, he lifted his chair to move it and injured his low back, due to the difficulty in rolling the chair on the new mats. Plaintiff further stated he experienced the immediate onset of back pain.
4. Lori Sineath, a senior examiner with defendant, and Dwight Godwin, defendant's district supervisor, stated the floor mats were smooth on top, with spikes on the bottom of the mat. At the hearing before the Deputy Commissioner, defendant produced the mat described by Ms. Sineath and Mr. Godwin. Plaintiff testified that the mat produced by defendant was not the same one that he had, despite the fact that the mat had the same product number as plaintiff's mat on the purchase order. In an attempt to explain the difference in mats, plaintiff speculated that the wrong mat had been sent for him by purchasing. No additional evidence was produced indicating the top of the mat was "bumpy." *Page 4 
5. The Full Commission gives greater weight to the testimony of Ms. Sineath and Mr. Godwin than to plaintiff concerning the condition of the floor mat. The Full Commission does not find plaintiff credible concerning the alleged injury by accident. Plaintiff's testimony also was not credible when he denied at the hearing any prior workers' compensation claims. His supervisors stated that plaintiff had filed claims in 2003, June 2007 and July 2008, in addition to the subject claim in October 2007.
6. Subsequent to October 2, 2007, defendant removed the new chair mats from the office in which plaintiff worked. Mr. Godwin indicated that he ordered mats at the request of employees and that after plaintiff reported having an injury, the mats in question were removed as a precautionary measure. No other employee reported any problems with the new mats.
7. Prior to October 2, 2007, plaintiff had a history of extensive neck and back problems He had undergone a three-level cervical fusion and multiple lumbar surgeries, including a procedure at the L3-L4 levels in 2006 and at the L4-L5 levels on the left side in August 2007. These surgeries were performed by Dr. James Nitka. On September 14, 2007, Dr. Nitka noted that plaintiff's left-sided symptoms were significantly improved and released him to return to work at full duty.
8. Ms. Sineath, plaintiff's immediate supervisor, testified that plaintiff had ongoing back problems since he started working for defendant. She stated it was her understanding that plaintiff needed additional back surgery and previously planned to have the surgery done after he became fully vested as a state employee.
9. On October 3, 2007, plaintiff was examined by Dr. Nitka, whose medical notes from that date reflect that plaintiff experienced a sudden onset of severe low back pain while moving his chair at work. Dr. Nitka further noted that plaintiff's current symptoms included *Page 5 
right-sided radiculopathy. The MRI performed on October 10, 2007 revealed foraminal stenosis on the left at the L2-L3, L3-L4 and L4-L5 levels, along with moderate foraminal stenosis on the right at L3-L4. On October 17, 2007, Dr. Nitka diagnosed plaintiff as having a disc protrusion at L3-L4 that was affecting the L3 nerve root.
10. Plaintiff was out of work for approximately a week. Thereafter, plaintiff continued to work continuously for defendant-employer until he underwent surgery in August 2008.
11. Dr. Nitka initially treated plaintiff conservatively, including administering epidural steroid injections. When plaintiff's condition did not respond to conservative treatment, Dr. Nitka concluded the only remaining treatment option was surgery. On August 8, 2008, plaintiff underwent a right sided L3-L4 transforaminal lumbar interbody fusion and bone graft, an L2-L3 transforaminal lumbar interbody fusion and bone graft, an L4-L5 transforaminal lumbar interbody fusion and bone graft, an L5-S1 lateral recess decompression, a posterolateral lumbar interbody fusion from L2 to L5, and a fixation with pedicle screws and rods from L2 to L5 with a cross clamp at L3-L4.
12. Following the August 8, 2008 surgery, Dr. Nitka medically excused plaintiff from work. Post-operatively, plaintiff has experienced some improvement, but indicated he continues to experience pain with prolonged standing, sitting, walking and with daily life activities.
13. On the issue of causation, Dr. Nitka opined that it was "likely he [plaintiff] had probably exacerbated that previous condition." Dr. Nitka did not state his opinions to a reasonable degree of medical certainty. Furthermore, Dr. Nitka's causation opinion was based upon the history given to him by plaintiff and the temporal relationship of when plaintiff first reported symptoms.
14. Dr. Nitka further opined that plaintiff is permanently and totally disabled from *Page 6 
returning to gainful employment due to his low back fusion procedure.
15. Dr. Nitka assigned plaintiff a 45% permanent partial disability rating to his back. This was based upon 20% for L3-L4, 20% of the remaining 80% for L2-L3, and a final 20% of the remaining 64% for L4-L5.
16. On July 24, 2009, plaintiff underwent an independent medical evaluation with Dr. Max E. Cohen at defendant's request. Dr. Cohen stated that plaintiff's diagnostic scans from before and after October 2, 2007 were basically the same. Dr. Cohen indicated the only way to relate plaintiff's need for the August 8, 2008 surgery to the alleged incident on October 2, 2007 was with a temporal relationship based upon plaintiff's complaints of pain. Dr. Cohen could not say to a reasonable degree of medical certainty that plaintiff's back conditions that necessitated surgery were related to the incident occurring on October 2, 2007.
17. Based upon the greater weight of the credible evidence of record, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident on October 2, 2007.
18. The Full Commission finds there is insufficient credible lay and medical evidence of record upon which to find that the condition which required plaintiff to undergo surgery on August 8, 2008 was the direct and natural result of or causally related to any work-place incident occurring on October 2, 2007.
19. Plaintiff's pursuit and defendant's defense of this claim was reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW *Page 7 
1. On October 2, 2007, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 449 S.E.2d 233, 237 (1994).
2. Even assuming arguendo, that on October 2, 2007 plaintiff did sustain an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident, our courts have repeatedly held that expert medical testimony that is speculation or conjecture is insufficient to prove causation in workers' compensation cases. Holly v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). To establish causation in cases such as this one, plaintiff must produce expert testimony to "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Id. Based upon the credible lay and medical evidence of record upon, there is insufficient evidence of record upon which to conclude that the condition which led to plaintiff's August 8, 2008 surgery was the direct and natural result of or causally related to any work-place incident occurring on October 2, 2007. N.C. Gen. Stat. § 97-2(6); Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
3. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act and he is not entitled to medical or indemnity compensation. N.C. Gen. Stat. §§ 97-2(6), 97-25, 97-29.
4. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground and, therefore, neither party is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. *Page 8 
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 28th day of June, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER